Edward McHENRY and Carl McHenry, Appellants,

v.

UNITED STATES of America, Appellee.

Nos. 7037, 7038.

United States Court of Appeals Tenth Circuit.

Sept. 12, 1962.

Rehearing Denied Oct. 12, 1962.

Gordon Hoxsie, Salt Lake City, Utah, for appellants.

Gerald R. Miller, Asst. U. S. Atty. (William T. Thurman, U. S. Atty., was with him on the brief), for appellee.

Before PICKETT, HILL and SETH, Circuit Judges.

HILL, Circuit Judge.

The defendants, Carl and Edward Mc-Henry, were tried, convicted and sentenced on two counts of an information. Count I charged them with the offense of bank robbery in violation of 18 U.S.C. §§ 2113(a) and 2113(d), and Count II with conspiracy to commit bank robbery in violation of 18 U.S.C. § 371. Both defendants appeal, urging that the trial court erred in refusing to suppress their oral admissions and written confessions of guilt to the crimes charged in the information and that the sentences imposed by the court are unlawful.

The record discloses that at approximately 3:05 p. m. on January 8, 1962, the Highland Drive Branch of the Valley State Bank in Salt Lake City, Utah, was robbed by a masked bandit armed with a gun and a total of $13,869.31 was taken from the bank. On January 10, 1962, the defendants were interviewed by agents of the Federal Bureau of Investigation in connection with such robbery. This interview commenced at the offices of

the state parole board in Salt Lake City as defendants, who were on parole from the state penitentiary for armed robbery, were making their regular report to the board. Both voluntarily went to the F.B.I. offices where the interview was continued without either of the defendants making any admissions concerning the robbery. They were not taken into custody at that time. They were interviewed again by F.B.I. agents in the evening and early part of the night on January 12, 1962, and again made no admissions or confessions with regard to the robbery in question. Later on that same night and after the money taken in the bank robbery had been recovered, the defendants were placed under arrest by the F.B.I. agents and incarcerated in the Salt Lake County Jail. The following morning they were taken before the United States Commissioner and were fully advised of their rights in compliance with Rule 5 of the Federal Rules of Criminal Procedure, 18 U.S.C. They informed the Commissioner they would employ their own attorney and the matter was then continued as to the question of whether the defendants wanted a preliminary hearing until such time as they had employed and consulted with their attorney.

In the afternoon of January 13, the defendants were interviewed by officers from the Salt Lake County Sheriff's office relative to some unsolved local or state offenses in which they were suspects and at that time defendants made oral confessions of their guilt to the bank robbery here in question. Subsequently on the same day and according to the testimony of the F.B.I. agents, at the request of the defendants, they were interviewed again by agents of the F.B.I., at which time they orally admitted their participation in the crimes charged in the information and made the written confessions sought to be suppressed. It should be noted here that at the beginning of each of the interviews, the defendants were fully advised of their constitutional rights and that they could terminate such interview at any time they so desired.

On January 15, 1962, the defendants appeared before the United States Commissioner and waived preliminary hearing. Neither of them had employed counsel and they advised the Commissioner that they did not want counsel appointed for them. On February 2, they appeared in District Court, an attorney was appointed to represent Edward and, upon his motion, Edward's case was sent back to the Commissioner for preliminary hearing. Carl again waived a preliminary hearing. The preliminary hearing for Edward was held and probable cause being found, he was held to answer on the charges in District Court.

On February 21, 1962, both defendants again appeared in District Court and waived indictment in writing and consented to prosecution by information. Edward entered a plea of not guilty to both Counts of the information. Carl pleaded not guilty to Count I and guilty to Count II. At this time, the attorney previously appointed to represent Edward was also appointed to represent Carl. Thereafter, and on February 26, Carl was allowed to change his plea of guilty on Count II to not guilty and his case was sent back to the Commissioner for a preliminary hearing. Probable cause was found upon such hearing and Carl was held to answer on the charges in District Court.

Prior to the trial, the defendants moved to suppress the oral admissions and written confessions made by them on January 13 to the sheriff's officers and to the F.B.I. agents upon the grounds that such admissions and confessions were not voluntarily given but rather were obtained by the officers by threats and promises. A hearing on this motion was held before the district judge prior to trial and was denied. The case proceeded to trial, the admissions and confessions were admitted into evidence over defendants' objections and both defendants were convicted by a jury on both Counts of the information. Each defendant was sentenced to serve the maximum term of 25 years imprisonment on Count I and 5 years

imprisonment on Count II, the sentences to run concurrently.

It is first claimed that the defendants were induced and coerced into making such admissions and confessions by means of the following asserted threats: to "lock up" or put Carl's girl friend, Phyllis Carlson, in jail; to embarrass and prosecute the defendants' parents; to revoke their paroles; to commit physical violence to Carl during the course of one of the interviews; and a threat that the officers had the goods on the defendants and they had better confess; and the following asserted promises: not to prosecute them for the state or local offenses; to write a good report to the Judge; and to lessen their jail time.

■■ An involuntary confession or one obtained by means of threats and promises which subject the mind of the accused to the torture of fear or flattery of hope is inadmissible in a criminal trial. United States v. Carignan, 342 U.S. 36, 72 S.Ct. 97, 96 L.Ed. 48; Wilson v. United States, 162 U.S. 613, 16 S.Ct. 895, 40 L.Ed. 1090; Martin v. United States, 4 Cir., 166 F.2d 76; Stickney v. Ellis, 5 Cir., 286 F.2d 755. By the same token, an admission or confession made by the accused in a criminal case if freely and voluntarily given without inducements or coercion, is admissible in evidence and this is true even though it is made after arrest or while the accused is in lawful custody. United States v. Carignan, supra; United States v. Mitchell, 322 U.S. 65, 64 S.Ct. 896, 88 L.Ed. 1140; Fowler v. United States, 10 Cir., 239 F.2d 93; Ruhl v. United States, 10 Cir., 148 F.2d 173; Jones v. United States, 111 U.S.App.D.C. 276, 296 F.2d 398.

■■ The test to determine the voluntary or involuntary character of admissions or a confession is whether the accused, at the time he made them, is in possession of "mental freedom" to confess or deny a suspected participation in the crime. Lyons v. Oklahoma, 322 U.S. 596, 64 S.Ct. 1208, 88 L.Ed. 1481. In order to arrive at such a determination it is necessary to look at and consider all of the facts and circumstances surrounding the making of the admissions or confession. This Court, in the opinion by Judge Huxman, in Ruhl v. United States, supra, 148 F.2d at page 176, aptly states and confirms this rule.[1]

■ We must, therefore, view the admissions and confessions sought to be suppressed here in the light of all the surrounding facts and circumstances and determine if the trial judge was correct in holding they were given freely and voluntarily, and without threats, promises or coercion. The record clearly shows that the constitutional rights of the defendants were guarded throughout the course of the investigation. At the outset of each and every one of the interviews, the defendants were advised that they had a right to consult an attorney, that they were not required to give a statement, that any statement they did give could be used against them, that they could terminate the interview at any time they so desired and that no promises or inducements could or would be given. The record is also clear that the defendants were not subjected to long and exhausting examinations, physical abuses or to any of the other so-called "third degree" methods which are universally condemned by the courts. They were promptly taken before the Commissioner after their arrest. No contention to the contrary in these respects is made and none could be on this record.

The defendants' testimony, of course, was that the admissions and confessions here in question were not given freely and voluntarily, but, rather, were obtained by means of the threats and promises heretofore related. However, with respect to the asserted threat to commit physical violence to Carl, it is significant.

1. "No hard or fast rule can be laid down by which the admissibility of a confession may be determined with finality in every case. Every confession must be viewed in the light of all the surrounding facts and circumstances. It should be upheld only when it can be said from such an examination that it was given freely and voluntarily, and without threats, compulsion or use of force. * * * "

that no testimony to this effect was presented at the hearing on the motion to suppress. At that hearing, Carl testified fully about the other alleged threats and promises and, in response to a question by his attorney as to whether any other threats or promises were made, stated "Not any other threats or promises, no." It was not until the trial that testimony of the alleged threat in question was presented. It is also significant that neither of the defendants made any admissions or confessions until after they had been arrested and taken before the Commissioner and, when the written confessions were given, it was at an interview they requested themselves. Moreover, in their testimony at the hearing on the motion to suppress and at the trial, the investigating officers alleged to have made the threats and promises in question denied or controverted that such threats or promises were in fact made and stated that no threats or promises of any kind were made to coerce or induce the defendants into confessing or admitting they were guilty.

■ On the conflicting testimony thus adduced, there was presented the issue of whether the admissions and confessions were voluntary or not depending upon whether the investigating officers or the two defendants were telling the truth. The trial court correctly followed the rule prevailing in the federal courts by first passing upon the admissibility of the admissions and confessions after a full and fair hearing on the motion to suppress out of the presence of the jury, and by then submitting that issue to the jury under appropriate instructions for its consideration in determining what credibility, if any, would be accorded to them. Dyson v. United States, 9 Cir., 283 F.2d 636; Leonard v. United States, 9 Cir., 278 F.2d 418; Smith v. United States, 9 Cir., 268 F.2d 416; Brown v. United States, 5 Cir., 228 F.2d 286; Wright v. United States, 102 U.S.App.D.C. 36, 250 F.2d 4. By its verdict, the jury resolved that issue against the defendants. We agree with the trial court and the jury that the admissions and confessions were given freely and voluntarily, and without threats, promises or coercion and find no error in their admission into evidence.

■■ Defendants next contend that the sentences imposed upon them by the lower court are unlawful. This contention is answered by an examination of the statutes involved. The penalty provided in 18 U.S.C. § 2113(a) for the crime of bank robbery is a fine of not more than $5,000 or imprisonment for not more than 20 years or both. 18 U.S.C. § 2113(d) provides that if "in committing, or in attempting to commit, any offense defined in subsections (a) and (b)" the accused assaults any person or puts in jeopardy the life of any person by the use of a dangerous weapon or device, the penalty for such crime shall be a fine of not more than $10,000 or imprisonment for a term or not more than 25 years or both. Here, the defendants were charged in Count I of the information with a violation of §§ 2113(a) and 2113(d). The jury convicted them on that charge, and, in so doing, necessarily found that the defendants did place a life in jeopardy by use of a dangerous weapon. In fact, the jury, in response to a special interrogatory, specifically found that a real gun had been used by the defendants in the robbery of the bank. The sentence of 25 years imprisonment imposed on each of the defendants on Count I of the information is, therefore, clearly proper and lawful under the express provisions of § 2113(d). The crimes charged by the two Counts of the information are separate and distinct offenses. Callanan v. United States, 364 U.S. 587, 81 S.Ct. 321, 5 L.Ed.2d 312; Pinkerton v. United States, 328 U.S. 640, 66 S.Ct. 1180, 90 L.Ed. 1489. The Court was, therefore, empowered to impose separate sentences under such Counts. However, the 5 year sentence imposed under Count II was adjudged to run concurrently with the 25 year sentence imposed under Count I, so no possible prejudice could result from the sentence on Count II even if it could be concluded that such sentence was illegal.

Affirmed.