JONES *v.* STATE OF INDIANA.

[No. 868 S 127. Filed December 5, 1969. Rehearing denied February 2, 1970.]

*Bruce R. Snyder, G. Stanley Hood,* of Fort Wayne, for appellant.

*Theodore L. Sendak,* Attorney General, *Murray West,* Deputy Attorney General, *Mark Peden,* Deputy Attorney General, for appellee.

ARTERBURN, J.—Appellant was charged by indictment with the crime of murder while attempting to perpetrate a robbery.

He was tried by a jury and found guilty of first degree murder in the commission of a felony.

The facts are that on May 12, 1967, the deceased, Everett Bechtel, was working as a bartender at Pete and Beck's Tavern in Fort Wayne, Indiana. Independent evidence shows that approximately at closing time, 12:30 a.m., an eyewitness who was across the street in a cafe heard a noise like a pop-gun and when he looked up he saw two men standing on the steps of the tavern. Another man came running out of the tavern. The three then fled. The decedent was found dead, lying near the door, with shotgun wounds. It was apparent that he had been engaged in closing up the business, as the cash drawer containing money was open. The appellant in a confession admitted that prior thereto he and two other men had planned the robbery of the tavern at closing time; that they had come to the door and one of them asked to buy a bag of potato chips. A bag of potato chips was found near the door on the floor following the killing. The appellant stated he had used a shotgun belonging to his father-in-law. The shot-gun of the father-in-law was found hidden in a garage, where the appellant had stated it could be found.

The two main contentions on appeal are that the appellant, prior to his confession, was not given adequate warning under *Miranda* v. *Arizona* (1966), 384 U. S. 436, 86 S. Ct. 1602, 16 L. Ed. 2d 694, and that there was not sufficient evidence independent of the confession to prove the corpus delicti of the crime charged.

On May 17, 1967, appellant was questioned at the Fort Wayne Police Station. Detective Sergeant James Andrews testified that he informed appellant that:

"He was advised that he had the right to remain silent; that anything he did say could and would be used against him in Court; he had the right, advised he had the right to call an attorney; he had the right to have an attorney present at that time if he wishes; if he did not have the funds to hire an attorney the Court would appoint one for him. He was

advised that if he did decide to answer questions and talk to us that he had the right to stop at any time he wished."

In addition to the above warning, the state introduced as evidence exhibit 31 in the trial court, which was entitled "Your Rights" "Fort Wayne Police Department" and which contained the following information:

"YOUR RIGHTS

"FORT WAYNE POLICE DEPARTMENT

| | |
|---|---|
| PLACE | Station |
| DATE | 5-17-17 |
| TIME | 2 P.M. |

Before we ask you any questions, you must understand your rights. You have the right to remain silent. Anything you say can be used against you in court. You have the right to talk to a lawyer for advice before we ask you any questions, and to have him with you during questioning. You have this right to the advice and presence of a lawyer even if you cannot afford to hire one. We have no way of giving you a lawyer but one will be appointed for you, *if and when you go to court* and the court finds that you are a pauper. If you wish to answer questions now without a lawyer present, you have the right to stop answering at any time. You also have the right to stop answering questions until you talk to a lawyer.

WAIVER

I have read the statement of my rights shown above. I understand what my rights are. I am willing to answer questions and make a statement. I do not want a lawyer. I understand and know what I am doing. No pressure of any kind has been used against me.

SIGNED    /s/    Morris Jones

| | | | |
|---|---|---|---|
| WITNESS | /s/ | Sgt. Raymond Chambers | |
| WITNESS | /s/ | Sgt. James Andrews | H 4060 |
| TIME | | 2 P.M." | (Our emphasis.) |

Testimony by Detective Sergeant Andrews further revealed that when a copy of the above quoted form was given to the appellant and while he was holding it, another identical copy was read to him, word for word.

"Q. And after this was read to him what did he say, if anything?

"A. He said he understood it."

The waiver statement was then read to appellant, upon the completion of which he signed it. The document was then admitted into evidence without objection.

The appellant was questioned and then returned to his home after being asked to return to the police station the next day. On May 18, 1967, appellant returned to the police station and was shown the rights paper and again informed verbally as to his rights. He was advised that he had the right to remain silent; that anything that he said could and would be used in Court; that he had the right to call an attorney; that he had the right to have an attorney present at that time before he answered any questions. He was also advised that if he could not afford an attorney that the Court would appoint one for him and that if he decided to answer questions and go ahead and talk that he could stop at any time he wished.

The appellant was again asked if he understood and replied that he did. Appellant was then informed he was under arrest for the charge of preliminary homicide. Thereafter, appellant recited to the police officers how he, Johnny Rouse and Larry Henderson had attempted to rob Pete and Beck's tavern pursuant to a plan they had formulated the night before. The plan called for appellant to ask for a bag of potato chips as a pretense to gain entry. The confession was sufficient to implicate appellant in the attempted robbery of the tavern.

After appellant finished his narrative of the events surrounding the attempted robbery of the tavern and the subsequent death of Everett Becktel, he was asked if he would be willing to give the police a written statement concerning the facts he had just verbally given them. He said he would. The

written statement contained the following questions and answers preliminary to the statement itself.

"Q. Do you understand your constitutional rights, that is, that you are entitled to consult an attorney; that you are not compelled to make a statement; that anything you say may be used either for or against you in court?

"A. Yes."

Appellant contends that the confession should not have been admissible as evidence in the trial court. The reasons appellant gives for this contention are:

1. The advice given appellant by the Fort Wayne Police Department was inadequate under the standards laid out in *Miranda* v. *Arizona* (1966), 384 U. S. 436, 86 S. Ct. 1602, 16 L. Ed. 2d 694, in that *Miranda* requires that the accused person be informed that if he cannot afford an attorney, one will be appointed for him prior to any questioning. Appellant contends the advice given by the police was to the effect that the appellant would be appointed an attorney *if and when he went to court* and the court determined he was a pauper.

2. The advice given by the police to appellant with reference to his constitutional rights was not coupled with the requisite explanations necessary for a person of his low intelligence, reading ability, and lack of experience with the police. The effect of this advice, absent the necessary explanation, cannot result in a warning under *Miranda*, since, appellant contends, there could be no intentional relinquishment of his constitutional rights without this explanation.

3. It is further submitted that the wording at the end of the statement signed by appellant to the effect that if he were an indigent, an attorney would be furnished to him, was ambiguous, in that it was not explained at that time what the word "indigent" meant, or at what stage an attorney would be appointed, and further, this pronouncement was contradictory in the face of the statements printed on

the rights waiver and read to appellant by police officers, to the effect that if appellant could not afford to hire a lawyer, one would be appointed for him if and when he went to court and was found to be a pauper.

We agree with appellant's statement of the law that *Miranda* requires the accused to be informed that he has the right to have an attorney present during the interrogation. *Fendley* v. *United States* (1967 C. A. 5th Cir.), 384 F. 2d 923.

However, the warning here given appellant did not inform him only of his right to have an attorney appointed by the court. Twice in the above quoted testimony of Detective Sergeant Andrews appellant was told that "he had the right to have an attorney present at that time if he wished." The verbal warnings given appellant were sufficient to inform him that he had the right to have an attorney present and that if he was "without funds," the court would appoint an attorney for him. This sufficiently satisfies the criteria expressed by *Miranda*.

The appellant's blind contention that the statements by the police led him to believe that counsel would only be appointed for him in court, was similar to the contention in the case of *Coyote* v. *United States* (1967 C. A. 10th Cir.), 380 F. 2d 305. The court affirmed the conviction and held that the accused was adequately informed of his rights under *Miranda*.

It seems to us in this case the warning given the appellant was extensive. It is true that he was told that he could not have a lawyer until he appeared in court, but at the same time he was plainly told he need not answer any questions until he got the lawyer. Although he might not have understood the term "indigent," at one place however, he was told if he was "without funds" he could have a lawyer.

*Coyote* v. *United States* (1967 C. A. 10th Cir.), 380 F. 2d 305, also contains guidelines to be used in determining wheth-

er the words used were adequate to inform the accused of his constitutional rights.

"Surely Miranda is not a ritual of words to be recited by rote according to didactic niceties. What Miranda does require is meaningful advice to the unlettered and unlearned in language which he can comprehend and on which he can knowingly act. We will not indulge semantical debates between counsel over the particular words used to inform an individual of his rights. The crucial test is whether the words in the context used, considering the age, background and intelligence of the individual being interrogated impart a clear, understandable warning of all of his rights.

"It is, of course, always open to an accused to subjectively deny that he understood the precautionary warning and advice with respect to the assistance of counsel. When the issue is raised in an admissibility hearing, i.e., see McHenry v. United States, 10 Cir., 308 F. 2d 700, it is for the court to objectively determine whether in the circumstances of the case the words used were sufficient to convey the required warning." *Coyote* v. *United States, supra,* at 308.

The appellant was asked in the trial court to read the document entitled "Your Rights" and to read the written waiver which he signed. Appellant had trouble reading them and was unable to read many words contained therein. The appellant thus contends that the words conveyed to appellant for the purpose of informing him of his constitutional rights were inadequate to satisfy the test of "whether the words in the context used, considering the age, background, and intelligence of the individual being interrogated, impart a clear understandable warning of all of his rights."

Testimony in the trial court revealed that the document containing both the section pertaining to the accused's constitutional rights and the waiver were read to appellant. The transcript shows that at least twice during the interrogation of appellant he was asked if he understood his constitutional rights. On both occasions his answer was, "I understand."

"In determining whether the due process clause of the 14th Amendment is violated, the admissibility of the confes-

sion is tested by the same standard in both Federal and State prosecutions, that is whether under all the attendant circumstances, the confession was free and voluntary, fully self-determined, the product of a rational intellect and a free will, and without compulsion or inducement of any sort, or whether the accused's will was overcome at the time he confessed. (Omitting citations)" *Johnson v. State* (1968), 250 Ind. 283, 235 N. E. 2d 688, 694.

The confession of appellant satisfies this criteria and his answers to the police questions shows he understod the nature and consequences of his waiver of his constitutional rights. Appellant has failed to overcome the prima facie admissibility of the confession or satisfy the burden of showing its incompetence.

The appellant further contends the confession is inadmissible due to the failure of the state to show the corpus delicti of the elements involved and included in the indictment under which he is charged. Appellant does not question the corpus delicti of the murder. However, the appellant alleges that before the extrajudicial statements are admissible into evidence, the corpus delicti of both the murder and the attempted robbery must be established, since this case involves the felony-murder rule.

In a late case from our Court involving proof of corpus delicti we noted that it was a cautionary rule. We stated:

". . . The rule requiring proof of the corpus delicti of a crime has its origin and basis in the hesitancy of the law to accept without adequate corroboration, the confession of a defendant (extrajudicial) unless it be one made in open court—as a plea of guilty." *Brown v. State* (1958), 239 Ind. 184, 154 N. E. 2d 720.

Although the use of corpus delicti as part of the proof in a criminal case had its origin as a cautionary measure in our criminal jurisprudence, courts at times have forgotten the purpose or object of the principle. In some instances the meaning has been expanded to a point where the entire crime must be proved to make out proof of the corpus delicti, al-

though in some instances, as in our Court, we have said that the proof need not be beyond a reasonable doubt. Whether or not any real purpose is served in giving corpus delicti a broad and expansive meaning has been a subject of considerable confusion to the courts of the various jurisdictions. Black's Law Dictionary, 4th Ed. gives a meaning to corpus delicti which, in our opinion, is a correct one:

> "*Corpus delicti*. The body of a crime. The body (material substance) upon which a crime has been committed, e.g., the corpse of a murdered man, the charred remains of a house burned down. In a derivative sense, the substance or foundation of a crime; the substantial fact that a crime has been committed."

Wigmore recognizes the confused judicial opinions in this field. Wigmore on Evidence, Third Edition, Vol. VII, § 2072, p. 401, defines corpus delicti as follows:

> "The meaning of the phrase '*corpus delicti*' has been the subject of much loose judicial comment, and an apparent sanction has often been given to an unjustifiably broad meaning. It is clear that an analysis of every crime, with reference to this element of it, reveals three component parts, *first*, the *occurrence* of the specific kind of injury or loss (as, in homicide, a person deceased; in arson, a house burnt; in larceny, property missing) ; *secondly*, somebody's criminality (in contrast, e.g. to accident) as the source of the loss,—these two together involving the commission of a crime by *somebody;* and *thirdly*, the accused's *identity* as the doer of this crime."

Wigmore then proceeds to point out that if only the first element be required to prove the corpus delicti, namely, the mere death or the burnt house, it would be sufficient as a cautionary rule, and apparently he prefers such a limited meaning for corpus delicti. He further points out, however, that the majority of the courts require not only proof of the first element, but the added element that criminality was involved, namely, that the homicide was felonious or the burning of the house was caused by some criminal act such as arson. He states to require the third element, namely,

the identity of the accused or that he was specifically involved as part of the proof of corpus delicti, would be absurd and as a result would be synonymous with proving the whole crime, independent of any confession, and would in a sense eliminate the value of confessions.

The majority rule as set forth by Wigmore is the rule that in our opinion was followed in *Brown* v. *State* (1958), 239 Ind. 184, 154 N. E. 2d 720. There we said:

"A dead body alone is not proof of the corpus delicti in a homicide case; but an identified dead body with marks of violence thereon or surrounding circumstances that would indicate the deceased did not die from natural causes establishes prima facie that a homicide has been committed and the corpus delicti. (Omitting citations.) "Likewise, the corpus delicti in an arson case is not established by the burning of a building alone, but additional independent evidence is necessary to show it was intentionally set afire in violation of the law."

For a recent case in point see: *Ellis* v. *State* (1969), 252 Ind. 472, 250 N. E. 2d 364.

In this case the appellant was charged with murder in the first degree, specifically in the attempt to commit a robbery. The statute, Burns' Ind. Stat. Anno. § 10-3401, reads as follows:

"*Murder—First degree—Penalty.* Whoever purposely and with premeditated malice, or in the perpetration of or attempt to perpetrate a rape, arson, robbery, or burglary, kills any human being, is guilty of murder in the first degree, and on conviction shall suffer death or be imprisoned in the state prison during life."

It will be noted that murder in the first degree can be committed by a homicide which involves premeditated malice, rape, arson, robbery or burglary, and it is our opinion in this case the corpus delicti is established by evidence independent of the confession of a homicide from which inferences may be drawn that it was feloniously done without evidence independent of the confession specifically of premeditation, rape or any of the other enumerated felonies. We are

borne out in this position by what we believe is substantial and growing authority. The United States Supreme Court and Federal courts have taken a position even less strict than the one we announce here. They permit merely corroborating independent evidence of the confession without reference to corpus delicti to be sufficient, if it tends to establish the trustworthiness of the confession.

In *Landsdown* v. *United States* (1965, 5th C. C. A.), 348 F. 2d 405 the position of the United States Supreme Court in *Opper* v. *U. S.* (1954), 348 U. S. 84, 75 S. Ct. 158, 99 L. Ed. 101, is reviewed and the present rule of the Federal system is set forth:

> "We are first called upon to decide whether the government sustained its burden of proof of the corpus delicti before the admission into evidence of Landsdown's extra judicial confessions and admissions. Landsdown contends that there was no independent evidence, apart from his statements, that the pistol found in his automobile was ever outside the state of Louisiana. Consequently, the argument proceeds, the statements should not have been admitted because an essential element of the offense, interstate transportation of a firearm, was not proven without the aid of the statements. Although this position has found some support we think it overlooks the basic purpose of the rule requiring corroboration of an extrajudicial confession before its admission into evidence. The justification for such a rule was well expressed in Opper v. United States, note 4, supra, where it was said:
>
>> 'In our country the doubt persists that the zeal of the agencies of prosecution to protect the peace, the self-interest of the accomplice, the maliciousness of an enemy or the aberration or weakness of the accused under the strain of suspicion may tinge or warp the facts of the confession.' 348 U. S. 84, 89-90, 75 S. Ct. 158, 162.
>
> "It is thus a sound principle that requires incriminatory statements of questionable reliability made outside the presence of a judge to be corroborated by substantial, independent evidence before their admission into evidence against the accused. But the natural suspicion surrounding such statements does not justify a rule which would require, not only such corroboration as would lend credence to the statements of the accused, but also substantial evidence of

every element of the offense with which he is charged. Such a rule would go beyond the requirement of crediting the confession and impose an impediment to effective law enforcement. We therefore prefer the less stringent and more reasonable requirement of corroboration of the statement itself, rather than proof of every element of the crime charged." *Opper* v. *U. S.* (1954), 348 U. S. 84, 75 S. Ct. 158, 99 L. Ed. 101; *U. S.* v. *Fayette* (1968 2d Cir.), 388 F. 2d 728; *Mossbrook* v. *U. S.* (1969 9th Cir.), 409 F. 2d 503; *Bray* v. *U.S.* (1962 D. C. Cir.), 306 F. 2d 743; *Kelly* v. *U. S.* (1957 10th Cir.), 246 F. 2d 864; *Landsdown* v. *U. S.* (1965 5th Cir.), 348 F. 2d 405; See also: *State* v. *Lucas* (1959), 30 N. J. 37, 152 A. 2d 50; *State* v. *Paris* (1966), 76 N. M. 291, 414 P. 2d 512; *State* v. *Yoshidu* (1960), 44 Hawaii 352, 354 P. 2d 986; See 45 A. L. R. 2d 1316.

We are not inclined however at this time to go as far as the Federal courts have in their lenient interpretation of what constitutes sufficient corroborating evidence to establish the admissibility of a confession. The majority rule, as we noted previously from *Brown* v. *State* (1958), 239 Ind. 184, 154 N. E. 2d 720, seems to us to be the better and more rational principle to follow. It does not mean that a prima facie case with all of the elements of the crime charged has to be proved.

We are supported by what has been said in this state in *Brown* v. *State* (1958), 239 Ind. 184, 154 N. E. 2d 720. In *State* v. *Johnson* (1960), 31 N. J. 489, 158 A. 2d 11, as in the case before us, the appellants were charged with murder in the attempted commission of a robbery. It was argued there, as in this case, that there was no independent proof that the defendants were engaged in the attempted robbery at the time of the admitted felonious killing. The New Jersey Supreme Court reasoned as follows:

"The reason for the rule requiring evidence independent of the confession and corroborating it is to avoid the danger of convicting a defendant solely out of his own mouth of a crime that never occurred or a crime committed by someone else. . . .

\* \* \* \* \*

". . . In a prosecution for premeditated murder, the State is not required independently to prove those mental elements

if the defendant has given a confession that admits them. By the same token, independent proof of the felony in a felony-murder prosecution is not necessary if proof of the felony can be gathered from a corroborated confession. In our view the State satisfied the burden placed upon it by independently proving the fact of death, and by producing corroborative evidence tending to establish that when the defendants confessed that they participated in the holdup and killing they were telling the truth. We therefore find that the confessions were properly received in evidence and were amply corroborated."

From an extensive review of the authorities as to the quantum of evidence necessary to prove the corpus delicti in this state, we hold that it is not necessary to make out a prima facie case as to each element of the crime charged nor is it necessary to prove each element of the crime charged beyond a reasonable doubt before a confession is admissible. We further hold that the traditional definition of corpus delicti, as heretofore quoted from Black's Dictionary, namely, that the body (material substance) upon which a crime has been committed, i.e., the corpse of a murdered man or the charred remains of a burnt house, for example, plus independent evidence from which an inference may be drawn that a crime was committed in connection therewith, is sufficient to show the corpus delicti. Our rule is stricter than that held by the Federal courts and some state courts, as shown above, since in this state we require evidence of criminality in connection with the incident. However, in first degree murder under our felony-murder statute we do not require that the exact felony or attempted felony be established by evidence independent of the confession nor do we require that premeditation be proved by outside independent evidence where the charge is purposeful and premeditated first degree murder. These elements may be shown by use of the confession in connection with any independent evidence in making out the case.

There have been, in decisions of this state at times in the past, some dicta and confusion on this subject matter, and any

such statements or cases to the contrary of the principle enunciated above are hereby overruled. The principle defining corpus delicti, as above, is the majority rule and is that rule which is best designed to allow the efficient administration of criminal law and at the same time afford ample protection of the defendant's rights where a confession is involved.

We find that there was sufficient independent evidence under the rule enunciated above to prove the corpus delicti of the crime charged in this case. The independent evidence shows that the homicide committed in this state was one of violence under the circumstances from which one could draw the conclusion that it was criminal in nature.

The judgment of the trial court is affirmed.

Hunter and Givan, JJ., concur; DeBruler, C.J., dissents with opinion; Jackson, J., dissents with opinion.

## DISSENTING OPINION

DeBruler, C.J.—I dissent in this case. The categorical imperative of *Miranda* v. *Arizona* (1966), 384 U. S. 436, 86 S. Ct. 1602, 16 L. Ed. 2d 694, requiring a criminal defendant about to be interrogated by the police to be advised of his right to have pauper counsel present at the interrogation in the event he has no means to employ one, was not complied with in this case. The trial court, therefore, committed reversible error when he overruled the objection of defense counsel to the admission of the statements of the appellant during that interrogation.

Prior to the interrogation the appellant was told he had a right to call an attorney, to have an attorney present if he wished, and that the court would appoint him a lawyer if he was unable to hire one. He was also told he had a right to have a lawyer with him during the interrogation even if he could not afford to hire one. However, he was then advised that "We have no way of giving you a lawyer but one will be appointed for you, if and when you go to court and the court finds that you are a pauper."

There is, I agree, an inference that could be drawn from this advice the appellant could have pauper counsel with him during his interrogation. This inference could flow from the advice that he could somehow postpone the interrogation until after a court hearing at which his indigency would be determined and counsel appointed. The possibility that the appellant, a non-lawyer, might have been able to make this inference from the advice given him, does not meet the mandatory requirements of the *Miranda* case. As Chief Justice Warren wisely said in the *Miranda* case:

> "While authorities are not required to relieve the accused of his poverty, they have the obligation not to take advantage of indigence in the administration of justice. Denial of counsel to the indigent at the time of interrogation while allowing an attorney to those who can afford one would be no more supportable by reason or logic than the similar situation at trial and on appeal struck down in Gideon v. Wainwright. . . .
>
> "In order fully to apprise a person interrogated of the extent of his rights under this system then, it is necessary to warn him not only that he has the right to consult with an attorney, but also that if he is indigent a lawyer will be appointed to represent him. Without this additional warning, the admonition of the right to consult with counsel would often be understood as meaning only that he can consult with a lawyer if he has one or has the funds to obtain one. The warning of a right to counsel would be hollow if not couched in terms that would convey to the indigent— the person most often subjected to interrogation—the knowledge that he too has a right to have counsel present. As with the warnings of the right to remain silent and of the general right to counsel, only by *effective* and *express* explanation to the indigent of this right can there be assurance that he was truly in a position to exercise it." (Emphasis added.) 384 U. S. at 472, 473.

The *Miranda* case requires that the interrogating officials make a clear and direct statement to the defendant about to be interrogated that he has a right to have pauper counsel present at his interrogation in the event he has no means to employ one. The interrogating officials in this case made no such direct statement.

## Dissenting Opinion

JACKSON, J.—I am unable to agree with the conclusions reached in the majority opinion and dissent thereto.

My colleague, Judge DeBruler, has written a vigorous dissent on the lack of adequate warning under the *Miranda* rule in this case, in which dissent I concur. For that reason I deem it unnecessary, in this dissent, to further discuss that question.

I take issue with the following loose wording of the majority opinion reading as follows: "Appellant has failed to overcome the prima facie admissibility of the confession or satisfying the burden of showing its incompetency." My colleagues are reverting to the rules of civil procedure which permit the prima facie rule and where the burden of proof can shift from plaintiff to defendant. In criminal law and practice all presumptions, intendments and inferences are against the State in favor of the defendant, and the burden of proof always rests on the shoulders of the State and never shifts to the defendant. *Fehlman* v. *State* (1928), 199 Ind. 746, 161 N. E. 8; *Welty* v. *State* (1913), 180 Ind. 411, 100 N. E. 73.

I note with some interest and complete disagreement that the majority opinion relies to a large degree on the case of *State of New Jersey* v. *Sylvester Johnson, et al.* (1960), 31 N. J. 489, 158 A. 2d 11, as appears at pages 13 and 14 of the majority opinion, for the rationale enunciated in the remainder of that opinion. As the case and the majority approval appears in their opinion, it is in the interest of brevity omitted here. Indiana has in our own case law, ample precedent, buttressed by careful analytical thinking, that makes resort to out of state decisions unnecessary. *Simmons* v. *State* (1955), 234 Ind. 489, 129 N. E. 2d 121; *Dennis* v. *State* (1952), 230 Ind. 210, 102 N. E. 2d 650; *Parker* v. *State* (1949), 228 Ind. 1, 88 N. E. 2d 556; *Hawkins* v. *State* (1941), 219 Ind. 116, 37 N. E. 2d 79; *Gaines* v. *State* (1921), 191 Ind. 262, 132 N. E. 580; *Messel* v. *State* (1911), 176 Ind. 214, 95

N. E. 565; *Griffiths* v. *State* (1904), 163 Ind. 555, 72 N. E. 563; Wharton's Criminal Law, Vol. 1, § 359.

The evidence in the case at bar, produced by the State, and uncontradicted in any manner by any witness is to the effect that the money in the tavern had not been disturbed in any manner, nor was there any evidence other than appellant's extra-judicial confession that there was ever any intent to rob or attempt to rob the decedent or his place of business. Police Officer Robert Johnson testified that he counted the money and turned it over to decedent's son-in-law that same evening. The total amount of money in the cash register was $239.15, a plastic bag in the cabinet drawer left side of the cash register contained a total of $300.00, money in a cigar box in the same drawer contained a total of $38.00, the safe contained a total of $288.20, a cigar box on the right side of the cash register marked Tax Money contained a total of $20.67, there were some plastic tubes on the back bar containing a total of $21.25. This witness then testified he counted at the tavern a total of $605.27 in cash and $620.53 in checks for a grand total of $1,233.80 which he turned over to decedent's son-in-law, Warren Antoine.

It thus appears the facts in this case are on all fours with and supported by *Hayden* v. *State* (1964), 245 Ind. 591, 199 N. E. 2d 102.

The statement in the opinion relative to dicta and confusion and attempting by the majority opinion herein to overrule all statements or cases contrary to the majority opinion herein, is in my opinion bad law and one that this Court will regret. It seems to me that we are here substituting expediency and hysteria for deliberation and judgment.

There is a rule of law to the effect that what the State charges in an indictment or affidavit must be proven, even if it was unnecessary to make all the charges in the first instance. In this case the State having elected to charge appellant with the felony murder while attempting robbery must

now, in order to legally convict the defendant- appellant, prove both the intent and attempt as well as the homicide beyond a reasonable doubt. Having elected to bear that burden they must discharge it. *Abraham* v. *State* (1950), 228 Ind. 179, 91 N. E. 2d 358; *State ex rel. Cutsinger* v. *Spencer* (1941), 219 Ind. 148, 41 N. E. 2d 601.

Finally, I have always been of the opinion that a violent homicide, without justification, "was criminal in nature."

The judgment of the trial court should be reversed and remanded with instructions to grant appellant's motion for a new trial.

NOTE.—Reported in 252 N. E. 2d 572.