FILED

Jun 18 2018, 11:02 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court



ATTORNEY FOR APPELLANT

Michael R. Fisher
Marion County Public Defender Agency
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

James B. Martin
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Andrew Seal,<br>*Appellant-Defendant,*<br><br>v.<br><br>State of Indiana,<br>*Appellee-Plaintiff* | June 18, 2018<br><br>Court of Appeals Case No.<br>49A02-1711-CR-2547<br><br>Appeal from the Marion Superior<br>Court<br><br>The Honorable Grant W.<br>Hawkins, Judge<br><br>Trial Court Cause No.<br>49G05-1610-F1-42034 |

**Crone, Judge.**

# Case Summary

[1] Andrew Seal appeals his conviction for committing level 1 felony child molesting against four-year-old S.P. He argues that the trial court abused its discretion in admitting his confession without independent evidence of the corpus delicti. Although he concedes that there is independent evidence that he committed level 4 felony child molesting by touching S.P.'s sex organ, he contends that the corpus delicti rule demands independent evidence of penetration of S.P.'s sex organ, which is the element that raises the offense to a higher felony level. He also argues that the evidence is insufficient to support his conviction.

[2] We conclude that the independent evidence that Seal committed the offense of child molesting satisfies the purpose of the corpus delicti rule such that independent evidence of penetration is unnecessary for the admission of his confession. As such, the trial court did not abuse its discretion in admitting it. We also conclude that the evidence is sufficient to support his conviction. Therefore, we affirm.

# Facts and Procedural History

[3] In 2014, Seal was hired as a teacher for the prekindergarten program at Daystar Childcare ("Daystar"), a ministry of Englewood Christian Church in Indianapolis. From August 2015 through May 2016, four-year-old S.P. was assigned to Seal's classroom. In May 2016, while S.P.'s mother was putting S.P. in her car seat after dinner at a restaurant, S.P. told her mother about an

incident with "Mr. Andy." Tr. Vol. 2 at 64. S.P. said that at naptime, Seal touched her vagina with his finger under her clothes. *Id*. at 59-60.

[4] S.P.'s parents took her to their pediatrician, who advised them to call Riley Children's Hospital.[1] *Id*. at 65. S.P.'s parents also called Child Protective Services ("CPS"). CPS conducted a forensic interview with S.P. the week after she confided in her mother, but S.P. did not disclose any inappropriate touching. *Id*. at 66.

[5] S.P.'s mother reported S.P.'s allegations to a Daystar co-director. Daystar informed the Indiana Department of Child Services ("DCS") and restricted Seal from returning to his classroom until "everything had been cleared" by DCS. *Id*. at 77. DCS personnel interviewed Seal regarding the incident with S.P. Seal stated that S.P. got up from her cot during naptime. When he instructed her to go back to her cot, she turned around, pulled her pants down, and "shook her bottom at him." *Id*. at 78. Seal went to S.P.'s cot, told her to lie down, pulled up her pants, covered her with her blanket, and gave her some books. *Id*.

[6] On July 20, 2016, Seal was cleared to return to his classroom. In August, Seal reported to a Daystar co-director that he had unintentionally touched three-year-old J.B. inappropriately when she jumped on his lap. *Id*. at 80-81; State's Ex. 5. A Daystar co-director informed J.B.'s parents of the incident. In

---

[1] The record does not reveal whether S.P. was examined by her pediatrician or by doctors at Riley Children's Hospital.

September, J.B. told her mother about another incident. She said that at naptime Seal touched her "on [her] vagina" through her clothes or on top of her covers with his fingers or hand. Tr. Vol. 2 at 16-17. She said that he had done it more than once. *Id*. at 17. J.B.'s parents reported Seal's conduct to Daystar and removed J.B. from Daystar's programs. *Id*. at 22. Daystar terminated Seal and reported the allegations to DCS. *Id* at 86. Seal prepared a written statement providing accounts of five incidents with J.B., in which he denied that he had intentionally touched J.B. inappropriately. *Id*. at 87; State's Ex. 6.

[7] In late September or early October of 2016, Seal's five-year-old daughter S.S. told her mother (Seal's wife) that Seal had inappropriately touched her when they were in his bed. Tr. Vol. 2 at 32-33. S.S. said that she got in bed with Seal, and he started tickling her arms and then her "pee-pee." *Id*. at 35. Then, he pulled down her pants and underwear and tickled her on top of her "pee-pee." *Id*. at 36. Seal told S.S. not to tell, but she later told her mother. When S.S.'s mother confronted Seal with the allegations, he admitted they were true.

[8] Detective Genae Cook of the Indianapolis Metropolitan Police Department investigated J.B.'s and S.S.'s allegations against Seal. Forensic interviews of J.B. and S.S. were conducted. During the investigation, Detective Cook learned of the earlier report regarding S.P. Detective Cook called S.P.'s parents and requested a follow-up forensic interview with S.P. *Id*. at 67. At this interview S.P. "made a disclosure." *Id*.

As part of the investigation, Detective Cook conducted a videotaped interview with Seal. Seal signed a written advisement and waiver of his *Miranda* rights, and the following conversation took place:

> Q: So when you dealt with [S.P.], you said she just pulled her pa … pants down. So when you were watching her were you getting erections then? Did you start to feel it excite you?
>
> A: Yeah.
>
> Q: So when did you take a, take it to the next level?
>
> A: Um, she, at one point wanted me to just like put my finger down there so I did.
>
> Q: Okay. What do you mean put your finger down there?
>
> A. She wanted …
>
> Q: Tell me what you did?
>
> A: Like I put my finger down there. She grabbed ahold of my finger and started rubbin' herself with my finger.
>
> ….
>
> Q: So you started rubbin' her on her vagina then, did it become something that became somethin' between you and her at naptime or anything?
>
> A: It … happened like three times.

Q: So when you were touching [S.P.] was it over the underwear or under the underwear?

A: Hers was under the underwear because she would pull her pants down.

Q: Okay, so would your finger go up between the labia?

A: Yeah.

Q: Would you (inaudible) go inside?

A: No.

Q: Okay. But you would manipulate the labia …

A: Yeah.

Q: … get your finger up in there?

A: Well, I, just on top.

Q: Where did it …

A: Like inside …

Q: … did you go in between the crack?

A: … yeah, yeah, yeah, yes, yes …

Q: Okay.

A:  … yes, yes.

Q:  But you're not goin' in the hole …

A:  No, no.

Q:  … you're just goin' in between the cracks …

A:  Yes.

Q:  … where the clitoris is?

A:  Yes.

State's Ex. 8 (DVD); State's Ex. 9 pp. 26, 28-29 (transcript of DVD).

[10]    In October 2017, the State charged Seal with level 1 felony child molesting and level 4 felony child molesting of S.P.  Appellant's App. Vol. 2 at 29.  Under separate cause numbers, the State also charged Seal with level 4 felony child molesting of J.B. and with level 1 felony child molesting and level 4 felony child molesting of S.S.

[11]    The three causes were consolidated for trial, and Seal waived his right to a jury trial.  At the beginning of the bench trial, Seal indicated that he was contesting only the level 1 felonies based on the required element of penetration of the sex organ.  Tr. Vol. 2 at 5-6.  S.P., then six years old, testified that at naptime, Seal touched "[her] vagina."  *Id*. at 59.  She testified that Seal pulled down her clothes and "touched [her] skin on [her] vagina" with "his finger."  *Id*. at 60.

She testified that this happened more than one time and it always happened at naptime. *Id*. at 59-60. When asked if his finger moved or stayed still when he touched her, she answered that "it stayed still." *Id*. at 60. When asked how she felt when Seal was touching her vagina, she answered, "I don't know." *Id*. at 60. Detective Cook testified that she interviewed Seal and that "he admitted to the allegations." *Id*. at 95. The State submitted the DVD and transcript of Seal's confession. State's Exs. 8 and 9. Seal offered no objection at that time, and the trial court admitted the exhibits. At the conclusion of the evidence, the trial court found Seal guilty of level 4 felony child molesting in all three causes. However, for the level 1 felony child molesting charges, the trial court requested that the parties submit post-trial briefs on the law as to what constitutes penetration and whether the evidence proved penetration. Tr. Vol. 2 at 103, 107. In his post-trial brief, Seal argued that the trial court could not consider any part of his confession as evidence of guilt to support a conviction for level 1 felony child molesting because there was no independent evidence of the corpus delicti. Appellant's App. Vol. 2 at 78-79.

[12] At the sentencing hearing, the trial court first heard argument as to whether Seal's confession was admissible as evidence on the level 1 felony child molesting charges and whether there was sufficient evidence of penetration. The trial court found that his confession was admissible and found Seal guilty of level 1 felony child molesting of S.P.[2] The trial court sentenced Seal to

---

[2] The trial court found Seal not guilty of level 1 felony child molesting of S.S.

twenty years for his level 1 felony child molesting conviction and six years for his level 4 felony conviction, to be served concurrent to one another, but consecutive to the sentences imposed under the other two causes. This appeal ensued.

## Discussion and Decision

## Section 1 – The trial court did not abuse its discretion in admitting Seal's confession.

[13] Seal asserts that the trial court abused its discretion in admitting his confession as evidence of level 1 felony child molesting because there was no independent evidence of the corpus delicti. We review a trial court's ruling on the admissibility of evidence for an abuse of discretion and will reverse "only when the decision is clearly against the logic and effect of the facts and circumstances." *Shinnock v. State*, 76 N.E.3d 841, 843 (Ind. 2017).

[14] Before addressing the specific circumstances in this case, we briefly review the corpus delicti rule. "In Indiana, a person may not be convicted of a crime based solely on a nonjudicial confession of guilt. Rather, independent proof of the corpus delicti is required before the defendant may be convicted upon a nonjudicial confession." *Id*. (citation omitted). Historically, the corpus delicti was defined as "[t]he body of a crime.... In a derivative sense, the substance or foundation of a crime; the substantial fact that a crime has been committed." *Brown v. State*, 239 Ind. 184, 190, 154 N.E.2d 720, 722 (1958) (quoting BLACK'S

LAW DICTIONARY at 413 (4th ed. 1951)), *cert. denied* (1960). Evidence sufficient to satisfy the corpus delicti rule was described as follows:

> A dead body alone is not proof of the corpus delicti in a homicide case; but an identified dead body with marks of violence thereon or surrounding circumstances that would indicate the deceased did not die from natural causes establishes prima facie that a homicide has been committed and the corpus delicti. Likewise, the corpus delicti in an arson case is not established by the burning of a building alone, but additional independent evidence is necessary to show it was intentionally set afire in violation of the law. In other words, the independent evidence must be of such a character that reasonable inferences may be drawn to support a conclusion that a crime of the nature and character charged has been committed by someone.

*Id.* at 190-91, 154 N.E.2d at 722 (citations omitted).

[15] Our courts adapted the corpus delicti rule as our criminal law evolved. In *Jones v. State*, 253 Ind. 235, 252 N.E.2d 572 (1969), *cert. denied* (1977), our supreme court considered how the rule should be applied where a defendant was charged with first-degree murder in the commission of a felony pursuant to a statute that provided, "Whoever purposely and with premeditated malice, or in the perpetration of or attempt to perpetrate a rape, arson, robbery, or burglary, kills any human being, is guilty of murder in the first degree." *Id.* at 246, 252 N.E.2d at 578. Jones was charged with and convicted of first-degree murder while attempting to commit robbery. On appeal, he contended that although the State established the corpus delicti of murder, his confession to murder and

attempted robbery was inadmissible due to the State's failure to show the corpus delicti of attempted robbery. The *Jones* court rejected his argument:

> [W]e hold that *it is not necessary to make out a prima facie case as to each element of the crime charged* nor is it necessary to prove each element of the crime charged beyond a reasonable doubt before a confession is admissible. …. [I]n first degree murder under our felony-murder statute we do not require that the exact felony or attempted felony be established by evidence independent of the confession nor do we require that premeditation be proved by outside independent evidence where the charge is purposeful and premeditated first degree murder. These elements may be shown by use of the confession in connection with any independent evidence in making out the case.

*Id*. at 249, 252 N.E.2d at 580 (emphasis added).

[16]     Our supreme court discussed the difficulties of applying the corpus delicti rule to modern criminal law in *Willoughby v. State*, 552 N.E.2d 462, 467 (Ind. 1990). The State charged Willoughby with murder, robbery, and criminal confinement, all committed within a single criminal episode. He twice confessed to all three crimes but argued that his confessions were inadmissible because there was no independent evidence of the corpus delicti of each of the crimes. Guided by the purpose of the corpus delicti rule, our supreme court held that a strict application of the rule is not always required:

> [T]o support the introduction of a defendant's confession into evidence, the corpus delicti of the crime must be established by independent evidence of 1) the occurrence of the specific kind of injury and 2) someone's criminal act as the cause of the injury. The corpus delicti rule arose from judicial hesitancy to accept

without adequate corroboration a defendant's out-of-court confession of criminal activity. The primary function of the rule is to reduce the risk of convicting a defendant based on his confession for a crime that did not occur. Other justifications include the reduction of confessions produced by coercive tactics and the encouragement of thorough police investigations. The extent to which the rule actually furthers these goals has been seriously questioned, especially in light of developing procedural safeguards for voluntary confessions.  Most federal courts and several state courts have adopted a more flexible "trustworthiness" requirement for confession corroboration. In the past this Court has declined to adopt the "trustworthiness" rule.[3]  [*Jones*, 253 Ind. at 248, 252 N.E.2d at 578-79].

Strict adherence to the corpus delicti rule, in light of its declining utility, presents great difficulties in modern criminal law.

> If conscientiously applied, the requirement—especially the corpus delicti formulation—contains fertile grounds for numerous arguments and complexities of application. Definition of the corpus delicti may have been a relatively simple task when crimes were few and concisely defined. But increased use of the criminal sanction has greatly increased the number of criminal offenses. Further, modern statutes tend to define offenses more precisely and in greater detail than traditional case law.  Defining the corpus delicti has become more complex.  Comprehensive definitions of the corpus delicti, if incorporated into the

---

[3]  Federal courts apply the trustworthiness standard adopted by the United States Supreme Court in *Opper v. United State*s, 348 U.S. 84, 93 (1954).  The trend toward replacing the corpus delicti rule with a trustworthiness standard has continued. *See State v. Dern*, 362 P.3d 566, 580-83 (Kan. 2015) (listing states that have abandoned or modified the corpus delicti rule, explicitly adopting a standard of trustworthiness for the admissibility of confessions for any crime that does not naturally or obviously produce a tangible injury easily susceptible to physical proof, and stating, "The unfortunate fact that our longstanding recognition of [the trustworthiness] method of showing the corpus delicti has all too often been obscured by our previous insistence on reciting the formal rule even when inapplicable is remedied today.").

corroboration requirement, may impose an unrealistic or at least unnecessary burden upon the prosecution.

[MCCORMICK ON EVIDENCE § 145 at 371 (3d ed. 1984).[4]]

We are persuaded that where a defendant confesses to several crimes of varying severity within a single criminal episode, *strict and separate application of the corpus delicti rule to each offense adds little to the ultimate reliability of the confession* once independent evidence of the principal crimes is introduced. *The confession at that point has been substantially corroborated.* In such a case the confession stands as direct evidence of each crime, even those not separately corroborated, if the independent evidence establishes the corpus delicti of the principal crime or crimes.

*Id*. at 466–67 (emphases added) (citations omitted). The *Willoughby* court concluded that there was independent evidence of murder and robbery and "independent proof of the corpus delicti of criminal confinement was not needed because of the adequate corroboration of the principal crimes discussed in [Willoughby's] confessions," and therefore his confessions were admissible. *Id*. at 468. *See also Owens v. State*, 732 N.E.2d 161, 163 (Ind. 2000) (affirming admissibility of Owens's confession to murder and rape, where there was no independent evidence of rape, because "strict and separate application of the

---

[4] The current edition of the treatise states,

Application of the corpus delicti formulation may have been a relatively simple task that accomplished the purpose of the corroboration requirement when crimes were few and were defined in simple and concise terms. But modern statutory criminal law has increased the number and complexity of crimes. Simply identifying the elements of the corpus delicti thus provides fertile ground for dispute.

1 MCCORMICK ON EVIDENCE § 147 at 815 (7th ed. 2013).

corpus delicti rule to each offense adds little to the ultimate reliability of the confession once independent evidence of the principal crime is introduced") (quoting *Willoughby*, 552 N.E.2d at 467).

[17] Most recently in *Shinnock*, our supreme court summed up the corpus delicti rule as follows:

> Proof of the corpus delicti means proof that the specific crime charged has actually been committed by someone. Thus, admission of a confession requires some independent evidence of commission of the crime charged. The independent evidence need not prove that a crime was committed beyond a reasonable doubt, but merely provide an inference that the crime charged was committed. This inference may be created by circumstantial evidence.
>
> …. The State is not required to prove the corpus delicti by independent evidence prior to the admission of a confession, as long as the totality of independent evidence presented at trial establishes the corpus delicti.

76 N.E.3d at 843 (citations and quotation marks omitted). The court also distinguished the level of proof required to establish the corpus delicti for the admission of a confession from that required to sustain a conviction:

> For the preliminary purpose of determining whether the confession is admissible, the State must present evidence independent of the confession establishing that the specific crime charged was committed by someone. The degree of proof required to establish the corpus delicti for admission of a confession is that amount which would justify the reasonable inference that the specific criminal activity had occurred. It is not

necessary to make out a prima facie case as to each element of the offense charged, and the corpus delicti may be shown by circumstantial evidence.

On the other hand, in order to sustain a conviction the corpus delicti must be proved beyond a reasonable doubt. In determining the sufficiency of the evidence for conviction, the confession may be considered along with the independent evidence.

*Id*. at 843-44 (quoting *Harkrader v. State*, 553 N.E.2d 1231, 1232-33 (Ind. Ct. App. 1990), *trans. denied*).

[18] In *Shinnock*, the defendant was charged with and convicted of bestiality pursuant to Indiana Code Section 35-46-3-14(4), which required the State to prove that he "knowingly or intentionally perform[ed] an act involving . . . penetration of an animal's sex organ by the human male sex organ." He appealed, arguing that his confessions were inadmissible because the State failed to satisfy the corpus delicti rule. The Court of Appeals concluded that the State had not presented evidence of the penetration element, and therefore Shinnock's confessions were inadmissible. However, our supreme court disagreed and affirmed Shinnock's conviction. The court noted that "all the State had to present was independent evidence that provided an inference that the crime charged was committed." *Id*. at 844. The court concluded that there was "ample circumstantial evidence that provide[d] an inference that Shinnock committed bestiality." *Id*. Specifically, the court observed that the animal, a dog, was not there to greet her owner when he arrived home like she usually did

but was trapped in Shinnock's bedroom with him; when her owner opened the door to Shinnock's bedroom, the dog ran to hide under the couch; the floor was covered in dog feces, which was unusual; and Shinnock was in his underwear and had an erection. Our supreme court concluded, "All the facts taken together suffice to demonstrate both that the dog was a victim and that Shinnock committed the crime. Accordingly, the trial court properly found that the corpus delicti rule was satisfied and admitted the confessions into evidence." *Id.*

[19] We now turn to the resolution of this case. Seal was charged with two counts of child molesting. He was charged with level 1 felony child molesting pursuant to Indiana Code Section 35-42-4-3(a), which provides,

> A person who, with a child under fourteen (14) years of age, knowingly or intentionally performs or submits to sexual intercourse or other sexual conduct (as defined in IC 35-31.5-2-221.5) commits child molesting, a Level 3 felony. However, the offense is a Level 1 felony if:
>
> > (1) it is committed by a person at least twenty-one (21) years of age.

Section 35-31.5-2-221.5 defines "other sexual conduct" as an act "involving a sex organ of one person and the mouth or anus of another person; or the penetration of the sex organ or anus of a person by an object." Our case law has established that a finger is an object for purposes of the child molesting statute. *Simmons v. State*, 746 N.E.2d 81, 86 (Ind. Ct. App. 2001), *trans. denied*. It is also well established that the female sex organ includes the external

genitalia and that the slightest penetration of the female sex organ constitutes child molesting. *See, e.g., Short v. State*, 564 N.E.2d 553, 559 (Ind. Ct. App. 1991) (concluding that penetration of female sex organ includes penetration of external genitalia); *Stetler v. State*, 972 N.E.2d 404, 407-08 (Ind. Ct. App. 2012) (concluding that touching clitoral hood with finger supported jury's finding that Stetler penetrated victim's sex organ), *trans. denied*.

[20] The State also charged Seal with level 4 felony child molesting, which is defined in Section 35-42-4-3(b) as follows:

> A person who, with a child under fourteen (14) years of age, performs or submits to any fondling or touching, of either the child or the older person, with intent to arouse or to satisfy the sexual desires of either the child or the older person, commits level 4 felony child molesting.

[21] In support of the charges, six-year-old S.P. testified that Seal put his finger on her skin on her vagina and that he touched her more than one time. Seal confessed that he used his finger to rub S.P.'s vagina on three separate occasions and that his finger went "up between the labia … in between the crack … where the clitoris is." State's Ex. 9 pp. 28-29. Seal concedes that S.P.'s testimony provided independent evidence of level 4 felony child molesting and that his confession was admissible to prove that offense. Appellant's Br. at 14-15. However, Seal argues that his confession pertaining to penetration of S.P.'s sex organ is not admissible to prove level 1 felony child molesting because there was no independent evidence of the element of penetration.

[22] Based on the foregoing cases, we conclude that Seal's argument improperly focuses on a single element. As previously discussed, the admission of a confession requires some independent evidence that supports an inference that the crime charged was committed, but the corpus delicti rule does not require the State to "make out a prima facie case as to each element of the offense charged." *Shinnock*, 76 N.E.3d at 843; *Jones*, 253 Ind. at 249, 252 N.E.2d at 580. Here, the specific crime charged is child molesting. S.P.'s testimony establishes that she was a victim of child molesting and that Seal was the perpetrator. Her testimony justifies a reasonable inference that Seal committed the offense of child molesting.[5] In addition, despite her young age, her testimony includes details that match Seal's confession; that is, during naptime he touched her vagina with his finger and he did so more than once. We note that there is no suggestion or evidence that Seal's confession was procured through coercive tactics. The paramount consideration in applying the corpus delicti rule is whether independent evidence sufficiently corroborates the confession so that a defendant is not convicted of a crime that did not occur.[6] Here, the independent evidence sufficiently corroborates Seal's confession such that requiring the State to make a prima facie case on the element of penetration

---

[5] In fact, S.P.'s testimony is sufficient evidence to prove beyond a reasonable doubt that Seal committed level 4 felony child molesting. *See Bailey v. State*, 979 N.E.2d 133, 135 (Ind. 2012) ("A conviction can be sustained on only the uncorroborated testimony of a single witness, even when that witness is the victim.").

[6] Although this case satisfies the standard under the current corpus delicti rule, it may illustrate that it is time for our supreme court to consider updating our approach and adopting some form of the modern trustworthiness standard, as is now used by the federal courts and many states, which would accommodate the complexity and specificity of our modern criminal laws and effectively accomplish the purpose of the corpus delicti rule.

would add "little to the ultimate reliability of the confession." *Willoughby*, 552 N.E.2d at 467.

[23] In *Brown*, our supreme court observed,

> The purpose of requiring the proof of the corpus delicti in a criminal case is none other than to corroborate a confession before it is admissible. No other reason has been pointed out for the rule. When it serves that purpose there is no reason for extending it further, thus needlessly creating a technicality without any purpose or merit. Reason is the life of the law and when there is no reason for a rule there is nothing to sustain it.

239 Ind. at 202-03, 154 N.E.2d at 728. We agree. We conclude that the trial court did not abuse its discretion in admitting Seal's confession.[7]

## Section 2 - The evidence is sufficient to support Seal's level 1 felony child molesting conviction.

[24] Seal also challenges the sufficiency of the evidence supporting his level 1 felony child molesting conviction. In reviewing a claim of insufficient evidence, we do not reweigh the evidence or judge the credibility of witnesses, and we consider only the evidence that supports the judgment and the reasonable inferences arising therefrom. *Bailey v. State*, 907 N.E.2d 1003, 1005 (Ind. 2009). "We will

---

[7] Seal argues that "the Level 1 charge was the principal offense so that by implication, under the reasoning of *Owens*, independent evidence of that offense would be necessary." Appellant's Br. at 15. However, Seal's offenses do not comprise a single criminal episode involving different crimes. His crimes involve different felony levels of the same crime, and for the reasons we have discussed, we do not believe that the purpose of the corpus delicti rule would be served by requiring independent evidence of all the elements required to prove the higher felony level.

affirm if there is substantial evidence of probative value such that a reasonable trier of fact could have concluded the defendant was guilty beyond a reasonable doubt." *Id*. "In determining the sufficiency of the evidence for conviction, [Seal's] confession may be considered along with the independent evidence." *Shinnock*, 76 N.E.3d at 844 (quoting *Harkrader*, 553 N.E.2d at 1233).

[25] To convict Seal of level 1 felony child molesting, the State had to prove that he was at least twenty-one years old and knowingly or intentionally performed an act that involved the penetration of the sex organ of S.P., a child under the age of fourteen, by an object. Ind. Code §§ 35-42-4-3; 35-31.5-2-221.5; Appellant's App. Vol. 2 at 29.

[26] Seal asserts that S.P.'s testimony fails to provide substantial evidence of probative value and that his statement "is so equivocal as to provide no support for a conviction." Appellant's Br. at 19. We disagree. S.P. testified that Seal touched her on the skin of her vagina. In his statement, although Seal indicated that he was "not goin' in the hole," he confessed that his finger went "up between the labia … in between the crack … where the clitoris is." State's Ex. 9 pp. 28-29. As previously noted, the slightest penetration of the female sex organ, including the external genitalia, constitutes child molesting. *Short*, 564 N.E.2d at 559. Seal's argument is a request to reweigh the evidence, which we must decline. Accordingly, we affirm his conviction.

[27] Affirmed.

Bailey, J., and Brown, J., concur.