Carl Melvin LOVE, Appellant,

v.

STATE of Indiana, Appellee.

No. 1079S282.

Supreme Court of Indiana.

March 10, 1980.

Garry W. Miracle, Anderson, for appellant.

Theo. L. Sendak, Atty. Gen., Carmen L. Quintana, Deputy Atty. Gen., Indianapolis, for appellee.

PIVARNIK, Justice.

Defendant-appellant Carl Melvin Love was charged in Madison Superior Court with burglary, Ind.Code § 35–43–2–1 (Burns 1979 Repl.), and robbery, Ind.Code § 35–42–5–1 (Burns 1979 Repl.). Appellant was a juvenile at the time these crimes were committed. After a hearing on the prosecutor's motion, appellant was waived into Madison Superior Court to stand trial as an adult. He was tried to a jury and convicted on both counts. The trial court sentenced appellant to a determinate term of ten years on the burglary count and a determinate term of thirty-five years on the robbery count. Appellant raises three issues on this appeal, concerning: (1) whether the court erred in denying his motion to suppress and admitting his confessions into evidence; (2) whether the trial court erred in refusing to grant his motion for a directed verdict at the close of the State's case-in-chief; and (3) whether the evidence is sufficient to sustain the verdict on the robbery count.

The facts most favorable to the State are as follows. On November 6, 1978, appellant and two other youths, Ronnie Brooks and Tommie Watson, went to the home of Fern Rinker, allegedly to obtain payment for work appellant had done for her. The trio found the house to be dark and, thinking no one was home, decided to burglarize the house. Appellant kicked in the back door and they went inside, whereupon they were confronted by Mrs. Rinker. Appellant and his companions demanded Mrs. Rinker's

money, and when she refused, appellant and Watson struck her on the head with a stick. Appellant Love then threatened to kill Mrs. Rinker's cat if she did not give them her money. When Mrs. Rinker told them she had no money, appellant struck the cat with a .stick and killed it. After taking Mrs. Rinker's purse, Brooks and Watson broke several windows and set fire to the draperies. Love, Brooks and Watson then left the house and went into the backyard near an alley to divide the contents of Mrs. Rinker's purse. It is unclear whether they found any money in the purse.

## I.

[1] Appellant first argues that the trial court erroneously overruled his motion to suppress and admitted his confessions into evidence. He asserts these confessions were given involuntarily and as the result of threats and promises made by the police during the interrogations. As we stated in *Harrison v. State*, (1978) Ind., 382 N.E.2d 920, 923–24:

"The question of the admissibility of a confession is controlled by determining from the totality · of circumstances, whether or not it was made voluntarily. The circumstances to be considered include whether the confession was freely self-determined, the product of a rational intellect and free will, without compulsion or inducement, and whether the accused's will was overborne. *Murphy v. State*, (1977) 267 Ind. 184, 190, 369 N.E.2d 411, 415. We review the question on appeal as we do other sufficiency matters. We do not weigh the evidence, but rather determine whether there was substantial probative evidence to support the trial court's finding. *Works v. State*, (1977) 266 Ind. 250, 362 N.E.2d 144. We will not disturb a trial court's ruling on the admissibility of a confession when such ruling is based on substantial, though conflicting evidence. *Riggs v. State*, (1976) 264 Ind. 263, 270, 342 N.E.2d 838, 843."

*See Porter v. State*, (1979) Ind., 391 N.E.2d 801, 806–07.

Concerning the alleged inducements or promises, appellant testified that the interrogating officers told him that if he did not give a full confession, he would be sent to the Indiana State Farm at Pendleton for these crimes, instead of to the Boys School at Plainfield. He says the officers also told him, conversely, that if he would cooperate and tell them everything about his involvement in this crime, he would not be waived into adult court. When cross-examined by appellant's counsel, Officer Yeskie gave the following testimony on this issue:

"Q: You threatened him though, didn't you?

A: No sir.

Q: Not with physical harm, but with going felony if he didn't testify.

A: I said, sir, with that type of crime there was a possibility he would go to Pendleton.

Q: That's all you said?

A: Well, I believe I told him that due to the fact that other statements had been made against him that his cooperation might help in assisting him."

Record at 111. Appellant also was interrogated by Officer Phlegar, who testified on cross-examination as follows:

"Q: And during that time period while you were questioning him at any time did you advise him that if he made these statements voluntarily that there was a possibility that he could get leniency?

A: We were talking, reference to the subject that he would possibly have a chance to remain under the auspices of the juvenile court, but there was no distinct promises made or no coercion or no offers of favor.

Q: You told him that that was a possibility?

A: Yes sir, just merely a possibility.

Q: Did you advise him that there was a possibility that if he didn't come clean and tell you everything he knew that he might go to Pendleton?

A: I believe that there was something said to that effect, yes sir."

Record at 146.

This Court has held that a confession is inadmissible if obtained by a promise of immunity or mitigation of punishment. *Ashby v. State*, (1976) 265 Ind. 316, 354 N.E.2d 192. In *Ashby*, the defendants were given a specific promise that they would receive only ten-year sentences in exchange for confessing to a crime for which they could have received life sentences. We held that the trial court properly found the confessions to have been induced by the promise of mitigation of punishment. However, in *Ortiz v. State*, (1976) 265 Ind. 549, 356 N.E.2d 1188, we held that a confession was given voluntarily in spite of a police detective's statement that if the accused would confess, he would "see what he could do" and that he "could probably talk to the prosecutor and make a deal." These statements were distinguished from those made in *Ashby v. State* on the basis that they were so "vague and indefinite" that they did not constitute an inducement sufficient to render the confession involuntary.

Similarly, in *Harrison v. State*, (1978) Ind., 382 N.E.2d 920, the prosecutor informed the defendant that his cooperation "could be of benefit to him, but not necessarily." We held that "the substance of the prosecutor's comment was vague and ambiguous and thus not the sort of remark prohibited by *Ashby*." *Id.*, 382 N.E.2d at 924. Likewise, the police officers in the present case mentioned appellant's remaining in the juvenile system or being waived into adult court and being sent to Pendleton only as possibilities. The officers did not specifically tell appellant Love that he would be sent to Pendleton if he did not confess. They explained to him that, with these types of crimes, he could possibly be sent to Pendleton. They did not promise appellant that his cooperation would guarantee leniency or assure him that he would not be waived into adult court if he confessed. He was merely told that "his cooperation might help in assisting him." Like the statements objected to in *Harrison v. State, supra,* and *Ortiz v. State, supra,* these remarks did not amount to specific threats or promises of the kind prohibited by *Ashby v. State, supra.* The trial court was justified in finding that appellant's confessions were not the product of improper inducements, threats or promises. *Booker v. State*, (1979) Ind., 386 N.E.2d 1198.

Appellant's mother, Robbie Love, was present on both occasions when appellant gave the confessions. She testified that the police officers read appellant's rights to them, but that she didn't understand that anything appellant said could be used against him in court. Appellant Love testified that he could not read the rights card when the officers gave it to him for that purpose. He also testified that he did not read the transcript of the oral statement he gave and did not understand the consequences of signing the statement. However, on cross-examination in the motion to suppress hearing, appellant admitted that he understands each of the advisements which were given to him before he gave the confessions.

Officer Phlegar stated that he orally advised appellant and his mother of his rights. He then allowed the defendant to read the printed rights card. Appellant appeared coherent and alert, and indicated prior to signing the waiver of rights form that he understood his rights. Officer Yeskie testified that he advised appellant of his rights orally and that appellant responded to Yeskie's questions regarding appellant's understanding of his rights. Appellant and his mother signed the waiver form and were given an opportunity to ask questions. Officer Yeskie asked appellant if he had any objection to the transcript of his oral statement, and informed appellant that by

signing the statement, he was admitting that he fully understood and agreed with it. Appellant said he had no objections, and then signed the statement. His mother also signed it. We conclude there was substantial evidence from which the trial court could have found that appellant's confessions were given voluntarily.

### II.

[2] Appellant next argues the trial court erred in denying his motion for directed verdict at the close of the State's case-in-chief. After the court denied this motion, appellant introduced evidence in his defense. This action constituted a waiver of any error on this question. *Sypniewski v. State*, (1977) 267 Ind. 224, 368 N.E.2d 1359.

### III.

[3] Finally, appellant argues the evidence was insufficient to support the jury's verdict on the robbery charge. We do not agree. Appellant's second confession established that he, Watson and Brooks went to Mrs. Rinker's house and that after he kicked the door open, he hit Mrs. Rinker on the head with a stick and demanded her money. After Brooks grabbed the purse and ran out of the house, Watson ignited the draperies. He and appellant Love then ran out of the house and into the backyard near an alley, where they discovered Mrs. Rinker's purse on the ground. Tom Watson also testified at trial, and his version of the incident substantially corroborates the events recited in appellant's second confession. Appellant testified in his defense and admitted kicking the door open, but denied going into the house and robbing Mrs. Rinker. He therefore concludes the jury should have acquitted him of robbery. However, the jury was well within its province in choosing to disbelieve part of his testimony. *Sypniewski v. State, supra.* We think there was substantial evidence from which the jury could have found beyond a reasonable doubt that appellant committed the robbery as well as the burglary.

Finding no reversible error, we affirm the judgment of the trial court.

All Justices concur.

Gregory N. BROWNLOW, Appellant (Defendant Below),

v.

STATE of Indiana, Appellee (Plaintiff Below).

No. 779S190.

Supreme Court of Indiana.

March 11, 1980.

Defendant was convicted in the Superior Court, Allen County, Alfred W. Moellering, J., of being an accessory before the fact to felony-murder, and he appealed. The Supreme Court, Prentice, J., held that: (1) facts did not warrant an instruction on lesser included offense of robbery; (2) defense of abandonment was not available to defendant; (3) issue whether the homicide was the ordinary and probable effect of the robbery was a matter for the jury; and (4) there was sufficient evidence of probative value that defendant and his companion robbed two hitchhikers at gunpoint and that robbery resulted in death of one victim.

Affirmed.

**1. Homicide ⚏308(2)**

A defendant charged with felony-murder may be entitled to an instruction on

lesser included offenses under appropriate facts.

## 2. Criminal Law ⬙795(1)

Facts did not warrant an instruction on lesser included offense of robbery in prosecution for being an accessory before the fact in felony-murder where, assuming that defendant attempted to dissuade his companion from killing victim, defendant's efforts were unsuccessful and the victim was killed in a felony venture so as to preclude the defense of abandonment. IC 35–41–2–4, 35–41–3–10, 35–42–1–1 (1979 Supp.).

## 3. Criminal Law ⬙31

One of the requirements of the abandonment defense, as expressly provided by the statute, is that the defendant shall have prevented the commission of the crime. IC 35–41–2–4, 35–41–3–10, 35–42–1–1 (1979 Supp.).

## 4. Criminal Law ⬙31

Defense of abandonment was not available to defendant in prosecution for being an accessory before the fact to felony-murder in absence of evidence that the defendant prevented the commission of the crime. IC 35–41–2–4, 35–41–3–10, 35–42–1–1 (1979 Supp.).

## 5. Homicide ⬙268

Issue whether the homicide was the ordinary and probable effect of the robbery was a matter for the jury in prosecution for being an accessory before the fact of felony-murder. IC 35–41–2–4, 35–42–1–1 (1979 Supp.).

## 6. Homicide ⬙235

In prosecution for being an accessory before the fact to felony-murder, there was sufficient evidence of probative value that defendant and his companion robbed two hitchhikers at gunpoint and that such actions resulted in death of one victim. IC 35–41–2–4, 35–42–1–1 (1979 Supp.).

———

Bruce S. Cowen, Fort Wayne, for appellant.

Theodore L. Sendak, Atty. Gen., Richard Albert Alford, Deputy Atty. Gen., Indianapolis, for appellee.

PRENTICE, Justice.

Defendant (Appellant) was convicted in a jury trial of Accessory Before the Fact to Felony Murder, Ind.Code §§ 35–42–1–1 and 35–41–2–4 (Burns 1979), for which he was sentenced to imprisonment for thirty (30) years. This direct appeal presents the following issues:

(1) Whether the trial court erred in refusing to give instructions on lesser included offenses.

(2) Whether the evidence was sufficient to sustain the verdict.

Two youths, Norris and Chapman, were hitchhiking at 1:30 a. m. in Fort Wayne when they were picked up by a car in which defendant was the driver and Mitchell Stroud was a passenger. Defendant and Mitchell Stroud robbed the two hitchhikers at gunpoint. Then defendant said either, "Shall we let them out here?" or "let them out on your side."

Stroud vetoed the idea. Instead, they drove into the shadows of a building and Stroud, holding the gun upon the hitchhikers, ordered them to shut their eyes. Norris grabbed the gun and, in the ensuing struggle, it discharged and killed Norris. Stroud then released the victim, Chapman. Stroud's conviction for felony murder was affirmed by this Court. *Stroud v. State*, (1979) Ind., 395 N.E.2d 770.

### ISSUE I

The first assignment of error concerns the trial court's refusal to instruct the jury on the lesser included offense of robbery. Defendant contends that, since evidence was introduced that he abandoned the criminal effort by attempting to release the victims of the robbery, the jury could have found him innocent of felony murder, though perhaps guilty of the lesser included (robbery).

 He is correct in asserting that a defendant charged with felony murder may be entitled to an instruction on lesser included offenses under appropriate facts. *Cade v. State,* (1976) 264 Ind. 569, 579, 348 N.E.2d 394, 352 N.E.2d 473; *Hester v. State,* (1974) 262 Ind. 284, 289, 315 N.E.2d 351. However, such facts are not present in the case at bar.

 All of the State's evidence pointed to the guilt of the defendant as charged. There was some testimony that, after the robbery had been consummated, defendant stated that the victims should be immediately released; however, such fact, standing alone, does not show abandonment. Ind. Code § 35–41–3–10 (Burns 1979) defines the defense of abandonment as follows:

> "With respect to a charge under IC 35–41–2–4 [Aiding, Inducing, or Causing an Offense], IC 35–41–5–1 [Attempt], or IC 35–41–5–2 [Conspiracy], it is a defense that the person who engaged in the prohibited conduct voluntarily abandoned his effort to commit the underlying crime and voluntarily *prevented its commission.*" (Emphasis added)

One of the requirements of the abandonment defense, as expressly provided by the statute relied upon by defendant, is that the accused shall have *prevented* the commission of the crime. Assuming arguendo that defendant did attempt to dissuade Stroud, his efforts were unsuccessful. Norris was killed in a felony venture. The defense of abandonment was not available. Consequently, there was no evidence from which the jury could properly have applied an included offense instruction and found defendant not guilty of murder but guilty of robbery. *Hester v. State, supra.*

### ISSUE II

The next assignment of error concerns the sufficiency of the evidence. Defendant contends that he abandoned the crime and that the homicide was not the ordinary and probable effect of the robbery.

"When reviewing a claim of insufficient evidence, we, as a court of review, are limited to that evidence most favorable to the State along with all reasonable inferences to be drawn therefrom. If from that viewpoint the evidence supports the decision of the trier of fact upon each of the elements of the crime charged beyond a reasonable doubt, that decision will not be reversed. *Baum v. State,* (1976) 264 Ind. 421, 345 N.E.2d 831. In making this determination we will neither reweigh the evidence nor judge the credibility of the witnesses. *Beasley v. State,* (1977) Ind., 370 N.E.2d 360; *Robinson v. State,* (1977) Ind., 365 N.E.2d 1218." *Moten v. State,* (1978) Ind., 380 N.E.2d 544, 547.

 Defendant's first contention—that he abandoned the crime—was decided to the contrary in the preceding issue. His remaining contention—that the homicide was not the ordinary and probable effect of the robbery—was a matter for the jury. *Cf., Moten v. State, id.* We find that there was sufficient evidence of probative value that defendant and Stroud robbed the two hitchhikers at gunpoint, and that such actions resulted in the death of Norris.

We find no reversible error. The judgment of the trial court is affirmed.

GIVAN, C. J., and DeBRULER, HUNTER and PIVARNIK, JJ., concur.