**Jerry FINCHUM, Defendant-Appellant,**

v.

**STATE of Indiana, Plaintiff-Appellee.**

**No. 1–1283A374.**

Court of Appeals of Indiana, First District.

May 15, 1984.

Joseph B. Barker, Martinsville, for defendant-appellant.

Linley E. Pearson, Atty. Gen., Richard Albert Alford, Deputy Atty. Gen., Indianapolis, for plaintiff-appellee.

NEAL, Presiding Judge.

### STATEMENT OF THE CASE

Defendant-appellant Jerry Finchum (Finchum), was convicted by the Morgan Superior Court without the intervention of a jury, of the offense of child molesting under IND.CODE 35–42–4–3(b), a class C felony. The trial court imposed a five year sentence of which all but six months was suspended. Finchum appeals.

We affirm.

### STATEMENT OF THE FACTS

The evidence most favorable to support the conviction is as follows: Finchum, age 19, was employed to babysit in Finchum's home with three children, S.M., age 7, C.M., age 5, and B.M., age 4, by their mother,

L.M. L.M. had known Finchum for about six years and had hired him to babysit over a span of five and one-half years, while she worked. S.M., a boy, testified first for the state after the court had conducted a competency examination of him. This examination included questions by counsel, and went to his age, schooling, mentality, knowledge of truth, and perception of right and wrong. No objection was made by Finchum to S.M.'s competency.

The child testified that after Finchum gave the three of them baths, they went to bed in Finchum's room. S.M. and B.M., the boys, slept in a chair and C.M., a girl, was put in Finchum's bed. Finchum got in bed with C.M. and pulled a sheet over them. C.M. was dressed in a T-shirt and panties, while Finchum only had on gym shorts. Though the lights were out, the door was open sufficiently to let in light so that S.M. could see. He heard wiggling noises made by the bed, and heard C.M. crying "because she didn't want Jerry to do it". Jerry punched the wall with his fist leaving a hole and was heard to say to C.M., "I'm sorry". S.M. characterized the activity as "playing nasty". He could not articulate exactly what "playing nasty" was, but it included people getting on top of each other.

L.M., the mother, testified that to the child, "playing nasty" had sexual connotations and involved playing with the genitalia of the opposite sex. She stated that the next day the children acted sufficiently strange that it prompted her to ask what was wrong. S.M. told her. C.M. was afraid of Jerry and the bedroom. She examined C.M. and found the area around her vagina red and galled. She then called the police. Upon their questioning of Finchum, he admitted he had molested and fondled C.M., but did not rape her.

## ISSUES

Finchum presents two issues for review:

I. Whether there was sufficient evidence to establish the *corpus delicti* apart from the confession and did the State establish specific intent by probative evidence.

II. Did the court err in admitting Finchum's confession.

## DISCUSSION AND DECISION

*Issue I: Sufficiency of the evidence.*

IND.CODE 35–42–4–3(b) provides as follows:

"A person who, with a child under twelve (12) years of age, performs or submits to any fondling or touching of either the child or the older person, *with intent* to arouse or to satisfy the sexual desires of either the child or the older person ... (Emphasis added)."

Finchum's argument, as stated in his brief, is that the State has a "burden ... to establish the *corpus delicti* by evidence of specific intent", and that the State failed to establish the *corpus delicti* because "the State based its showing of the *corpus delicti*, as to the overt act itself upon the foregoing evidence" (recited in the Statement of Facts). Though it is not at all clear, we think his argument proceeds thusly: that the State must prove Finchum's guilt by evidence independent of the confession, that each element of the offense must be proven beyond a reasonable doubt, and that the State has failed to do so.

Finchum does not now, nor did he at trial, contest S.M.'s competency to testify. *See* IND.CODE 34–1–14–5; IND.CODE 35–1–31–3; *Newton v. State*, (1983) Ind.App., 456 N.E.2d 736 (7-year old prosecutrix in a molesting case). Second, Finchum raised no issue at trial relative to the *corpus delicti*, and such failure could result in a waiver of that issue. *Spright v. State*, (1970) 254 Ind. 420, 260 N.E.2d 770. Thirdly, Finchum is mistaken as to the office of *corpus delicti* as bearing on the sufficiency of the evidence.

We assume, without deciding, that for the purpose of determining the sufficiency of the evidence, a confession must be supported by independent corroborative evidence, or *corpus delicti Hayden v. State*, (1964) 245 Ind. 591, 199 N.E.2d

102. *Corpus delicti* merely means the occurrence of some specific injury and that someone's criminality was involved. In proving the *corpus delicti* it is not necessary to make out a prima facie case as to each element of the crime beyond a reasonable doubt. *Jones v. State,* (1969) 253 Ind. 235, 252 N.E.2d 572. The proof need not be full and conclusive, and the rule is not to be confused with the requirement that the state prove all of the elements of the crime charged beyond a reasonable doubt. *Hayden v. State, supra.* The corroborative evidence is to be considered together with the confession to determine whether the offense is proven beyond a reasonable doubt. *Dunbar v. State,* (1961) 242 Ind. 161, 177 N.E.2d 452. More specifically, in answer to Finchum's argument about intent, the State is not required to independently prove the mental elements of a particular crime if the defendant has given a confession which admits them. *Jones v. State, supra.*

■■■ Our standard of review does not permit us to reweigh the evidence or re-determine the credibility of witnesses. *Newton v. State, supra.* A conviction may be sustained on the uncorroborated evidence of a single witness, even if such witness is a minor. *Smith v. State,* (1982) Ind., 432 N.E.2d 1363; *Newton v. State, supra.* Specific intent may be inferred from all of the circumstances. *Best v. State,* (1981) Ind.App., 418 N.E.2d 316. We conclude that the corroborating, independent evidence presented by S.M. is sufficient to establish the *corpus delicti,* and that the evidence as a whole, including the confession, supports the conclusion of guilt beyond a reasonable doubt.

*Issue II: Confession.*

Finchum challenges the admission into evidence of his taped confession on the basis of denial of due process, right of counsel, failure to advise him of his constitutional rights, and incompetency. The core of his argument is his mental incapacity. The State presented evidence that officer Mason, who interviewed Finchum and took his taped statement, knew Finchum for years. He stated that Finchum was capable of long and lucid conversations. He knew Finchum was handicapped, but the problem was mostly physical. He also knew Finchum had a temper problem and was attending the mental health clinic for treatment. He did not know how far Finchum had progressed in school, or his intelligence level. He knew Finchum could not drive, but knew that he could write his name. Finchum's evidence indicated that he was 19 years old and had attended school in special education until the 8th grade. He could add, subtract and make change, but read and wrote poorly. Finchum had received head injuries at age 7 in an automobile accident which resulted in his partial paralysis. He could do some odd jobs.

Before questioning Finchum, Officer Mason advised him of his *Miranda* rights by reading them to him. Mason testified that he did not threaten Finchum or yell at him, and was not abusive or coercive. Mason specifically told Finchum that if he wanted a lawyer, the interview would end. When he asked Finchum if he fondled C.M., Finchum emphatically denied the act and wanted a lawyer. Thereupon the questioning ceased and Finchum was placed in a holding cell. Thirty minutes later Finchum contacted Mason and wanted to talk. Mason re-read Finchum's rights, and Finchum asked Mason if it would look better if he had a lawyer. Mason told him it would help if he told the truth, but there were no promises. Finchum acknowledged there were no promises made, and no coercion. Thereupon, Finchum admitted:

"Well, I mean, I did rape the little girl, well molested, didn't rape her. I mean, in a way, she wanted it as bad as I did."

He acknowledged caressing C.M. with his hand in her vaginal area. The tape fully corroborates Mason's testimony. Two days after the interview Finchum, on his own initiative, appeared at the police station and asked Mason if it would be alright to take a sack of toys to the little girl he had raped.

At trial Finchum denied molesting C.M. and said he made the above statement because he was scared, was in the drunk tank, and had not taken his benedril medication for his temper.

Finchum argued that because of his mental and physical handicap, there was no knowing, intelligent and voluntary confession, and that his will had been overborne. In his argument he refers to a psychological examination made by the Department of Correction at the court's request for inclusion in the pre-sentence material, though such evidence was not before the court at the trial on the merits. That report describes Finchum as functional at a border-line mentally retarded level with inadequate reading skills. The report states "it should be noted, however, that during the interview we often got the impression that his intellectual functioning was somewhat higher than indicated by testing, but still no higher than dull normal to low average".

Finchum's brief contains a recital of the requirements of *Miranda*, [1] and statements requiring that confessions be freely given, the product of a rational intellect and without compulsion or enducement in order to be admissible. We agree. The practical aspects of the admissibility of confessions are spelled out in *Smith v. State, supra.*

"It is well settled that the admissibility of a confession is controlled by determining from the totality of circumstances whether or not the confession was given voluntarily and not through inducement, violence, threats or other improper influences so as to overcome the free will of the accused. *Long v. State,* (1981) Ind., 422 N.E.2d 284; *Love v. State,* (1980) [272 Ind. 672], 400 N.E.2d 1371; *Arch v. State,* (1978) 269 Ind. 450, 381 N.E.2d 465. The question of voluntariness is one for the trial court. We review the question on appeal as we do other sufficiency matters. We do not weigh the evidence, but rather determine whether there was substantial evidence of probative value to support the trial court's

finding. *Schutz v. State,* (1981) Ind., 413 N.E.2d 913. We have consistently held that vague and indefinite statements by the police such as 'seeing what they could do for him' or it would 'be in his best interest to tell the real story' are not sufficient inducements to render a subsequent confession inadmissible. *Schultz v. State, supra; Turpin v. State,* (1980) [272 Ind. 629], 400 N.E.2d 1119."

We have not found a clear-cut Indiana case which discusses mental retardation in relation to the admissibility of confessions. However, *People v. Hester,* (1968) 39 Ill.2d 489, 237 N.E.2d 466 (474), cert. dismissed (1970) 397 U.S. 660, 90 S.Ct. 1408, 25 L.Ed.2d 642, the definitive case in this area, provides an informative review:

"In a more recent case the Supreme Court of California decided that the murder confession of a 17-year-old defendant with a mental age of 10 years, 2 months, and an IQ of 65 to 71 was properly admitted. (*People v. Lara,* [67 Cal.2d 365], 62 Cal.Rptr. 586, 432 P.2d 202.) The *Lara* decision concludes that 'a minor, even of subnormal mentality, does not lack the capacity as a matter of law to make a voluntary confession without the presence or consent of counsel or other responsible adult * * * the issue is one of fact, to be decided on the "totality of the circumstances" of each case'. (62 Cal.Rptr. at 603, 432 P.2d at 219.) A similar holding appears in *State v. Watson* 114 Vt. 543, 49 A.2d 174, where the admission into evidence of a confession of a 20-year-old defendant with a mental age between 8 and 9 years was upheld, the court reasoning that 'the mere fact that a person is an infant and of low mentality does not render his confession inadmissible as being involuntary, proving he has the mental capacity to commit the crime with which he is charged. The reason for this rule being that if a child has such mental capacity as to render him amenable to the law for the commission of a crime he has sufficient mental

---

**1.** *Miranda v. Arizona,* (1966) 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694.

capacity to make a confession of guilt.' 49 A.2d at 178.

Similar determinations sustaining the admission into evidence of confessions of minors possessing subnormal intelligence appear in *State v. Ordog*, 45 N.J. 347, 212 A.2d 370, where one defendant charged with murder had a chronological age of 19 years but the intelligence of a 7-year-old and the judgment of a 6-year-old according to expert opinion, and another 17½ year-old defendant possessed borderline intelligence, was diagnosed as a chronic undifferentiated schizophrenic, and committed to a State mental hospital after committing the murder but before he became a suspect. The admissibility of confessions by minors of subnormal mentality has also been upheld when elicited from a 15-year-old whose IQ was established to be between 61 and 80 (*Bean v. State*, 234 Md. 432, 199 A.2d 773); where a murder confession was given by a defendant with a chronological age of 15 years but who could not read or write and whose mental age was the equivalent of a 12-year-old (*Michaud v. State*, 161 Me. 517, 215 A.2d 87); where a 14-year-old Negro defendant with a mental age of 11 years and 4 months and an IQ of 79 confessed to the crime of rape (*Johnson v. Commonwealth*, 184 Va. 466, 35 S.E.2d 770); and where a defendant under the age of 16 confessed to a murder which he committed 2 days after his escape from a State hospital for the insane. (*State v. Ortega*, 77 N.M. 7, 419 P.2d 219.) In our own State we have held admissible the confession of a 19-year-old of below normal intelligence who was a confirmed narcotics addict (*People v. Townsend*, 11 Ill.2d 30, 141 N.E.2d 729, 69 A.L.R.2d 371, cert. den. 355 U.S. 850, 78 S.Ct. 76, 2 L.Ed.2d 60), and we have decided that the youthful age of 14, while an important factor bearing on voluntariness, does not alone render a defendant's murder confession inadmissible. (*People v. Connolly*, 33 Ill.2d 128, 210 N.E.2d 523.)"

*See* 23 C.J.S. *Criminal Law* 828, p. 227 reciting the same conclusions. Indiana cases exist which address the problem of persons under the influence of alcohol or drugs. *Harrison v. State*, (1978) 269 Ind. 677, 382 N.E.2d 920; *Turner v. State*, (1980) 273 Ind. 627, 407 N.E.2d 235; *Smith v. State*, (1969) 252 Ind. 425, 249 N.E.2d 493. Those cases opine that low intelligence, lack of formal education, and the degree of impairment of mental faculties are factors to be considered in determining the voluntariness of a confession. Nevertheless, the "totality of circumstances" rule applies. This problem is similar to the competency test of any witness. It is said in *Curry v. State*, (1969) 252 Ind. 347, 248 N.E.2d 30, where the rape victim was of limited mental capacity:

> "The qualification of a child or ... person of low mental ability does not require that she be a model witness nor is it necessary that she have an infallible memory or refrain from making inconsistent statements.

> \*　　\*　　\*　　\*　　\*　　\*

> The trial court was completely justified in admitting her evidence and weighing it with the other evidence, taking into consideration her limited capacities."

Our reading of the evidence, including a transcript of the taped statement, reveals no coercion, abuse, or intimidation by Mason. Nor were there any promises made. The transcript reveals knowledgeable communication by Finchum. The court observed Finchum and heard him testify. Finchum did not challenge his own ability to stand trial and did not file an insanity plea. He even filed a written waiver of a jury trial which stated in effect that he understood the nature of the charges and penalties.

 We believe the above authorities stand for the proposition that the mental capacity of a defendant whose confession is tendered is a factual matter to be determined by the trial court. Low mentality alone is not cause for excluding the evidence. It is but one factor in the totality of the circumstances to consider in determining whether the confession was freely and

knowingly given. The trier of fact may also consider the limited mental capacity of the defendant in weighing the evidence. In the present case, the trial court was justified in admitting the confession.

For the above reasons, this cause is affirmed.

Judgment affirmed.

ROBERTSON and RATLIFF, JJ., concur.