**Fernando C. GRIFFITH, Appellant (Defendant Below),**

v.

**STATE of Indiana, Appellee (Plaintiff Below).**

No. 41S00–0109–CR–438.

Supreme Court of Indiana.

May 16, 2003.

John P. Wilson, Wilson, Green & Cecere, Greenwood, IN, Attorney for Appellant.

Steve Carter, Attorney General of Indiana, Robin Hodapp–Gillman, Deputy Attorney General, Office of the Attorney General, Indianapolis, IN, Attorneys for Appellee.

SHEPARD, Chief Justice.

While in police custody, appellant Fernando Griffith confessed that he burglarized the residence of Lloyd and Judy Georges, murdered the couple, and set fire to their home. He contends that his confession should have been suppressed because the authorities were tardy in presenting him to a magistrate after his arrest.

We agree that this delay exceeded acceptable limits, but conclude that the trial court correctly declined to suppress the confession, which was given well after Griffith's initial court appearance, during an interview which he requested.

## Statement of the Facts and Procedural History

The Greenwood Fire Department responded to a fire at the home of Lloyd and Judy Georges early on May 19, 2000. Investigators discovered the bodies of Lloyd and Judy, and autopsies confirmed that stab wounds were the cause of death. Investigators further determined the fire was intentionally set with an accelerant. Jewelry was missing from the house along with Lloyd's wallet. The Georges' car was also missing from the garage.

The Greenwood police learned that a witness saw a black male carrying a gas can in the front yard of the Georges' house and walking into the front door of their home. A neighbor informed police that he saw the Georges' car pulling out of their garage the same morning around 5:05 a.m. The police found the car ablaze a few days later and ruled it arson because accelerant was used to fuel the fire.

Assisting the Greenwood Police, Indianapolis Officer Jack Tindall and Detective Thomas Richard Tudor went to Griffith's apartment building around 10:15 p.m. on May 21st, where they noticed that Griffith smelled of burnt smoke and had band-aids on his hands and fingers. At Detective Tudor's direction, Officer Tindall transported Griffith to the Greenwood Police Department where Officer John Laut noticed the strong smoke odor and the band-aids while booking Griffith. Upon further inspection, Laut found one of Lloyd's rings in Griffith's pocket. Griffith was arrested between 10:20 p.m. and 11:10 p.m.

Greenwood Detective Patti Cummings directed Officer Tindall to bring Griffith to the interrogation room for questioning. When Griffith arrived, Detective Cummings advised him of his *Miranda* rights during the early morning hours of May 22.

Griffith was held at the Greenwood Police Department before transport to the Johnson County Jail, which caused his name to be excluded from the jail population list of suspects who were to appear before the Magistrate within forty-eight hours. Later that day, police transported Griffith to the Johnson County Jail.

Hollis Kehrt was also arrested in connection with the present case. On May 23rd, the Greenwood Police, a captain from the Johnson County Jail, and the Johnson County Prosecutor wired Kehrt and placed him in the cell with Griffith to obtain "incriminating information" about the Georges' murder. Police placed Kehrt in the cell with Griffith before he appeared before a magistrate. The police were unable to collect any information, however, because they could not decipher any data from the wire.

The following day, police asked Griffith's girlfriend Jamie Young to make a controlled call in an effort to obtain incriminating information from Griffith. Though police instructed Young not to reveal that the call was controlled, she immediately did so, and Griffith revealed nothing.

The Greenwood Police prepared a probable cause affidavit on May 22nd, and revised it on May 23rd. On May 24th, Magistrate Craig Lawson conducted an initial hearing and determined that probable cause existed for Griffith's arrest.

The following day, Griffith's wife Elizabeth phoned Greenwood police and told them that Griffith wanted to speak with them. One day later, a judge granted an order to draw a sample of Griffith's blood. While en route to the hospital for the blood draw, Griffith confirmed that he wanted to speak with the Greenwood police.

At the later meeting with the Greenwood police, officers informed Griffith of his rights, including his right to counsel and right to remain silent, and Griffith signed a waiver. Griffith then confessed to the murder of Lloyd and Judy Georges and the burglary and arson of their home.

Thereafter, the State charged Griffith with two counts of murder, one count of burglary as a class B felony, and one count of arson, a class B felony. A jury found him guilty of all counts. The court sentenced Griffith to life without parole for the murders, and two consecutive eighteen-year sentences for the counts of burglary and arson.

Griffith initiated this direct appeal, claiming (1) that the police did not have probable cause to arrest him without a warrant, (2) that the delay in taking him before a magistrate made his confession involuntary, and (3) that he had an Equal Protection right to counsel before being charged.

■■■■ This Court reviews all challenges on a question of law under a *de novo* standard. We review denial of motions to suppress as a matter of sufficiency. *Goodner v. State*, 714 N.E.2d 638 (Ind.1999). In reviewing the trial court's ruling on the validity of a warrantless arrest, we consider the evidence favorable to the trial court's ruling and any uncontradicted substantial evidence to the contrary to determine whether there is sufficient evidence to support the ruling. *Vance v. State*, 620 N.E.2d 687 (Ind.1993).

■■■■ A trial court has broad discretion in ruling on the admissibility of evidence, and we will disturb its rulings only where it is shown that the court abused that discretion. *Wilkinson v. State*, 743 N.E.2d 1267 (Ind.Ct.App.2001), *trans. denied.* We view the circumstances in their totality and, without reweighing evidence and considering conflicting evidence most favorable to the trial court's ruling, determine if there was substantial evidence of probative

value to support the trial court's ruling. *Id.*

## I.  Warrantless Arrest

■ Griffith first claims that the trial court should have suppressed his confession because it was the product of a warrantless arrest without probable cause.

■ Probable cause adequate to support a warrantless arrest exists when, at the time of the arrest, the officer has knowledge of facts and circumstances that would warrant a person of reasonable caution to believe that the suspect committed a criminal act. *Borkholder v. State*, 544 N.E.2d 571 (Ind.Ct.App.1989); Ind.Code Ann. § 35–33–1–1(a) (West 1998). The amount of evidence necessary to meet the probable cause requirement for a warrantless arrest is determined on a case-by-case basis. *Peterson v. State*, 674 N.E.2d 528 (Ind.1996).

■ Probable cause can rest on collective information known to the law enforcement organization as a whole, and not solely on the personal knowledge of the arresting officer. *See Manson v. State*, 249 Ind. 53, 229 N.E.2d 801 (1967). The police force is considered a unit. Where there is a police-channel communication to the arresting officer, he acts in good faith thereon, and such knowledge and information exist within the department, the arrest is based on probable cause. *See Whiteley v. Warden*, 401 U.S. 560, 91 S.Ct. 1031, 28 L.Ed.2d 306 (1971); *see also Francis v. State*, 161 Ind.App. 371, 316 N.E.2d 416 (1974).

The evidence here indicates that Lloyd recently told a friend that his relationship with Griffith, who he called "Val," had become dire because he refused to purchase a vehicle for Griffith. Griffith's son confirmed that Val was Griffith. A neighbor reported that Lloyd argued with a black man who fit Griffith's description on his porch on the day of the fire. The Georges' car was missing and found ablaze two days later. A witness saw a black male carrying a gas can in the Georges' front yard and walk into the front door of their home. Furthermore, upon approaching Griffith's apartment, Officer Tindall immediately smelled the strong odor of smoke on Griffith and noticed band-aids on Griffith's hands and fingers. He also found one of Lloyd's rings in Griffith's pocket.

The arresting officers had probable cause to believe that Griffith murdered the Georges and committed burglary and arson. The arrest was thus valid.

## II.  Delay in Presentation to Magistrate

■ In his second motion to suppress his confession, Griffith asserted that the delay between his arrest and the probable cause hearing violated his rights under the United States Constitution.

■ An individual detained following a warrantless arrest is entitled to a "prompt" judicial determination of probable cause as a prerequisite to any further restraint on his liberty. *Gerstein v. Pugh*, 420 U.S. 103, 114, 95 S.Ct. 854, 43 L.Ed.2d 54 (1975). The promptness requirement is satisfied under *Gerstein* when the "administrative steps incident to arrest" are completed. *Id.* In *Riverside v. McLaughlin*, 500 U.S. 44, 56, 111 S.Ct. 1661, 114 L.Ed.2d 49 (1991) (citations omitted), the Court was more specific about the *Gerstein* standard: "a jurisdiction that provides judicial determinations of probable cause within 48 hours of arrest will, as a general matter, comply with the promptness requirement of *Gerstein*."

■ The law of Due Process acknowledges that delays cannot always be

avoided,[1] but the government must justify such delays. "Where an arrested individual does not receive a probable cause determination within 48 hours, ... the burden shifts to the government to demonstrate the existence of a bona fide emergency or other extraordinary circumstance." *Id.* at 57, 111 S.Ct. 1661. The fact that in a particular case it may take longer than forty-eight hours to consolidate pretrial proceedings does not qualify as an extraordinary circumstance. *Id.*

The facts show that approximately sixty-three hours passed between Griffith's arrest and his appearance before the magistrate for a determination of probable cause. Thus, the burden shifted to the State to demonstrate a bona fide emergency or extraordinary circumstance. Because Griffith was not included on the jail population list, his appearance before a magistrate was delayed. Of course, *Riverside* stands for the proposition that preliminary paperwork and pretrial proceedings do not constitute an extraordinary circumstance. The State is thus correct to acknowledge that the detention for sixty-three hours prior to a probable cause hearing was unreasonable under the *Riverside* analysis.

■■■ Whether this requires suppression of Griffith's confession is another matter. Even where a confession occurs before the defendant sees a magistrate, suppression may not be the inevitable remedy. *Powell v. Nevada*, 511 U.S. 79, 84, 114 S.Ct. 1280, 128 L.Ed.2d 1 (1994) (delay in presentation to judge was unconstitutionally delayed,

but "[i]t does not necessarily follow, however, that Powell must 'be set free' ").

The trial court in this case ordered suppression of any evidence gained after the forty-eight hours elapsed but before the probable cause hearing occurred. (App. at 585.) Griffith's confession, however, did not occur until two days after he saw the magistrate. And it occurred because he asked to speak with officers from the Greenwood Police Department.

We think it plain enough that Griffith's confession was not the product of delay in bringing him before the .magistrate and that the trial court correctly declined to suppress it.

### III. Was the Confession Coerced?

■■■ Griffith further argues that his confession was obtained in violation of his rights against self-incrimination.

■■■ Admissibility of a confession is governed determining from the totality of the circumstances whether or not it was made voluntarily. *Light v. State*, 547 N.E.2d 1073 (Ind.1989). Standard indicators for voluntariness include whether the confession was freely self-determined, the product of a rational intellect and free will, without compulsion or inducement of any sort, and whether the accused's will was overborne. *Johnson v. State*, 250 Ind. 283, 235 N.E.2d 688 (1968). Although the State at trial was required to prove the voluntariness of Griffith's statement beyond a reasonable doubt, we review the question on appeal as we do other sufficiency matters. We do not weigh the evidence, but rather determine whether there

---

1. *See e.g. Riverside*, 500 U.S. at 55, 111 S.Ct. 1661. ("Examples of delays include delays caused by paperwork and logistical problems. Records will have to be reviewed, charging documents drafted, appearance of counsel arranged, and appropriate bail determined. On weekends, when the number of arrests is often higher and available resources tend to be limited, arraignments may get pushed back even further. In our view, the Fourth Amendment permits reasonable postponement of a probable cause determination while the police cope with the everyday problems of processing suspects through an overly burdened criminal justice system.")

was substantial probative evidence to support the trial court's finding. *See Works v. State,* 266 Ind. 250, 362 N.E.2d 144 (1977).

Substantial evidence supports the trial court's finding that Griffith's confession was voluntary. Griffith signed a waiver after police informed him of his *Miranda* rights. While being held, Griffith asked his wife to inform police that he wished to speak with them.

Griffith never invoked his right to remain silent, as he now argues. He simply commented, "I might as well not say anything more," in response to the police not striking any deals with Griffith for his information. (Appellant's App. at 95–96.) Yet, he continued to disclose information after this statement during the interrogation. Griffith's statement, like that of the defendant in *Haviland v. State,* 677 N.E.2d 509, 514–15 (Ind.1997) who told police during interrogation, "I am through with this," does not constitute an invocation of silence.

We therefore hold that Griffith's confession was voluntary.

### IV. Denial of Counsel

Griffith finally contends that his confession should be suppressed because the court did not appoint counsel for him during the probable cause hearing or at the time he confessed. Griffith contends this violated the Equal Protection Clause of the Fourteenth Amendment.

Griffith acknowledges that the Sixth Amendment right to appointed counsel at public expense attaches at the moment an information or indictment is filed (something Magistrate Lawson told Griffith during the probable cause hearing). Griffith says a person of means could hire counsel to assist him in the hours before formal charges are filed and that depriving him of such help denies him equal protection and due process.

As Justice Kennedy has observed, "The Fourteenth Amendment's promise that no person shall be denied the equal protection of the laws must coexist with the practical necessity that most legislation classifies for one purpose or another, with resulting disadvantage to various groups or persons." *Romer v. Evans,* 517 U.S. 620, 631, 116 S.Ct. 1620, 134 L.Ed.2d 855 (1996). The line for court-appointed counsel has been drawn where it has been drawn. Griffith does not contend he suffered any damage by virtue of what occurred during his preliminary hearing, and when he asked to speak with the police and eventually confessed, he did so with the full knowledge that legal help at public expense was just at the horizon.

The trial court was right to deny Griffith's request to suppress his confessions on these grounds.

### Conclusion

We affirm the judgment of the trial court.

DICKSON, SULLIVAN, BOEHM, and RUCKER, JJ., concur.