**Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.**

ATTORNEYS FOR APPELLANT:

**THOMAS W. VANES**
Merrillville, Indiana

**MARK A. BATES**
Crown Point, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Indiana Attorney General of Indiana

**IAN MCCLEAN**
Deputy Attorney General
Indianapolis, Indiana

FILED
May 31 2013, 9:23 am
CLERK
of the supreme court,
court of appeals and
tax court

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| McLYNNERD BOND, JR., | ) | |
| | ) | |
| Appellant-Defendant, | ) | |
| | ) | |
| vs. | ) | No. 45A03-1205-CR-212 |
| | ) | |
| STATE OF INDIANA, | ) | |
| | ) | |
| Appellee-Plaintiff. | ) | |

APPEAL FROM THE LAKE SUPERIOR COURT
The Honorable Diane Ross Boswell, Judge
Cause No. 45G03-1102-MR-2

**May 31, 2013**

**MEMORANDUM DECISION - NOT FOR PUBLICATION**

**ROBB, Chief Judge**

## Case Summary and Issue

McLynnerd Bond, Jr., was charged with murder. He now brings this interlocutory appeal from the trial court's denial of his motion to suppress. The sole issue for our review is whether the confession Bond made to police was voluntary and, therefore, admissible. Concluding his confession was voluntary, we affirm the trial court's denial of his motion to suppress.

## Facts and Procedural History[1]

In 2011, Detective Edward Gonzalez of the Gary Police Department was the lead investigator in the 2007 murder of Kadmiel Mahone. The case was considered a "cold case" at that point. Transcript at 5. Detective Gonzalez had been informed that Bond may have been the perpetrator in the murder of Mahone.

In the evening of February 12, 2011, Bond was arrested on an unrelated matter. At about 11:00 the following morning, Detective Gonzalez advised Bond of his Miranda rights and began questioning him with regard to the murder. Bond's uncle, Detective James Bond of the Gary Police Department, was also present for the first part of the interrogation. Initially, Bond repeatedly denied killing Mahone. Detective Gonzalez was not convinced and used various techniques to try to induce Bond to confess to the murder. About one hour into the interrogation, he began to repeatedly promise Bond that he could see his family, including his "girl" and kids, if he told him what happened. Brief of Appellant at 5.[2] Detective Gonzalez also suggested that confessing would help

---

[1] We heard oral argument in this case on May 1, 2013, at Ivy Tech Community College in Lafayette, Indiana. We thank Ivy Tech for its hospitality and counsel for their advocacy.

[2] The interrogation was video-recorded but was not transcribed. We will cite to the parties' briefs for direct quotes from the interrogation.

Bond. He explained that a charge can be dropped to a lower charge, and told him that even though he was being charged with murder, if Bond took "ownership of what happened, we can change that 100%. You hear me. If you say what happened, we can change that whole thing. It's about lessening what happened." Id. at 7. He also told him the State "will do something for [him]" if he cooperated. Id. at 6. A little after two hours into the interrogation, Detective Gonzalez stated the following:

> Don't let twelve people who are from Schererville, Crown Point, white people, Hispanic people, other people that aren't from Gary, from your part of the hood, judge you. Because they're not gonna put people on there who are from your neck of the woods. You know that. They're not gonna be the ones to decide what happens to you. You know that. I know that. Everybody knows that. All they're gonna see is, oh, look at this, another young motherfucker who didn't give a fuck. Don't let them see that . . . . You want to take a chance and roll the dice and let twelve people who don't know you, don't know what the fuck you're about, or where you're from, or what (unintelligible) knows about, judge you and say "I believe what they're [the other witnesses] saying, I don't believe shit what he's saying" . . . .

Amended Brief of Appellee at 4. At some point after this comment, Bond noted that he could not afford a lawyer. However, Detective Gonzalez told him that he should not worry about that because there are public defenders. Almost three hours into the questioning, Bond admitted he shot Mahone. The interrogation lasted close to three-and-one-half hours.

Bond was charged with murder. Prior to trial, he brought a motion to suppress the interview in its entirety, contending that his confession was made involuntarily. The trial court conducted two hearings on the matter. Detective Gonzalez testified that he knew that there may or may not be African-Americans on the jury and that it was not up to him to decide, but that he wanted Bond to know that "[p]eople from other communities don't

3

understand what it is to live and have to deal with certain situations in Gary." Tr. at 40-41. Bond testified that he had ingested one pill of ecstasy prior to being arrested and, as a result of its effect, had not slept at all that night. He also testified that he had not eaten since being arrested.[3]

After both sides submitted memoranda on the issue, the trial court denied the motion to suppress in an order stating the following:

> The suggestion by the detective that the defendant could not receive a fair and impartial jury due to the location of the Courthouse causes great concern to the court, and is strongly discouraged. However, there is no caselaw that the Court is aware of that holds that this type of persuasion renders the confession involuntary. Therefore, after consideration of the evidence and arguments presented on the defendant's motion to suppress, and upon the recommendation of the magistrate, the previously filed motion to suppress is denied.

Appellant's Appendix at 52. Bond sought and was granted certification of the trial court's order, and this court accepted jurisdiction of his interlocutory appeal. Additional facts will be provided as necessary.

## Discussion and Decision

### I. Standard of Review

We generally review the denial of a motion to suppress for an abuse of discretion. Griffith v. State, 788 N.E.2d 835, 839 (Ind. 2003). The trial court's determination of the voluntariness of a confession is reviewed as are other sufficiency matters. Id. at 841. We do not reweigh the evidence, but rather determine whether there was substantial probative

---

[3] Bond was provided with food at the conclusion of the interrogation.

evidence to support the trial court's determination.[4]  Id. at 841-42.  However, when our review involves a question of law, we review the trial court's ruling de novo.  See id. at 839.

## II. Voluntariness of Confession

When the defendant challenges the admissibility of his confession, the State must prove that the confession was given voluntarily.  Pruitt v. State, 834 N.E.2d 90, 114 (Ind. 2005), cert. denied, 548 U.S. 910 (2006).[5]  "A confession is voluntary if, in light of the totality of the circumstances, the confession is the product of a rational intellect and not the result of physical abuse, psychological intimidation, or deceptive interrogation tactics that have overcome the defendant's free will.  The critical inquiry is whether the defendant's statements were induced by violence, threats, promises, or other improper influence."  Ringo v. State, 736 N.E.2d 1209, 1212-13 (Ind. 2000) (citations omitted).  When considering the totality of the circumstances, the trial court must consider the element of police coercion; the length of the interrogation, its location, and its continuity;

---

[4] We note that the parties disagree with regard to the standard of review.  Bond cites to Light v. State, in which our supreme court stated:  "Unlike the standard appellate review of sufficiency of the evidence, the standard of review for the voluntariness of confessions takes into consideration the total record.  Customarily a review for the sufficiency of the evidence only looks to the evidence favorable to the verdict."  547 N.E.2d 1073, 1076 (Ind. 1989) (citations omitted).  We note that it appears that the standard of review has morphed since the court made that statement in 1989, and the standard of review for the voluntariness of a confession has become more akin to that of sufficiency matters.  But see Faris v. State, 901 N.E.2d 1123, 1126 (Ind. Ct. App. 2009) (stating that "[u]nlike a typical sufficiency of the evidence case where only the evidence favorable to the judgment is considered, we also consider any uncontested evidence that is favorable to the defendant."), trans. denied.  Here, because there are no factual disputes and our review of questions of law is de novo, any differences in the standard of review are of no consequence.

[5] Under the United States Constitution, the State is required to prove by a preponderance of the evidence that the confession was voluntary.  Pruitt, 834 N.E.2d at 114.  The Indiana constitution requires the State to prove beyond a reasonable doubt that the confession was voluntary.  Id. at 114-15.  Bond cites to both standards, but does not develop a separate argument based on the Indiana Constitution.  We hold that his confession was voluntary even under the more stringent standard of reasonable doubt.

and the defendant's maturity, education, physical condition and mental health. Pruitt, 834 N.E.2d at 115 (quoting Miller v. State, 770 N.E.2d 763, 767 (Ind. 2002)).

Bond contends his confession was involuntary and therefore inadmissible. He relies primarily on promises made by Detective Gonzalez to help Bond, and on the deceitful comment made regarding the unlikelihood of having anyone from his "part of the hood" on the jury. See Br. of Appellant at 6.

As Bond acknowledges, vague or indefinite promises made during an interrogation do not render a subsequent confession involuntary, while specific promises of immunity or mitigation of punishment do. Compare Harrison v. State, 269 Ind. 677, 683-84, 382 N.E.2d 920, 924 (1978) (holding that a prosecutor's comment to a defendant that his cooperation "could be of benefit to him, but not necessarily" was vague and ambiguous and did not render the confession involuntary), cert. denied, 441 U.S. 912 (1979), with Ashby v. State, 265 Ind. 316, 321-22, 354 N.E.2d 192, 196 (1976) (holding that an officer's representation to a defendant that he would receive a "ten flat" sentence instead of a life sentence rendered his confession involuntary). Bond claims that the comments made by Detective Gonzalez that "they will do something for you" and "we can change that 100%" were specific promises that rendered his confession involuntary. See Br. of Appellant at 11. He points to the case of Hart v. Attorney Gen. of the State of Fla., 323 F.3d 884, 895 (11th Cir. 2003), cert. denied, 540 U.S. 1069 (2003), in which the Eleventh Circuit Court of Appeals held that the appellant's decision to waive his rights and confess was not voluntary because it was a product of deception. In Hart, after signing a form waiving his Miranda rights, the appellant asked to speak to a detective he knew and trusted. Id. at 894. When he asked the detective about the pros and cons of

6

having an attorney, she told him, in part, that "I'm going to want to ask you questions and he's going to tell you you can't answer me." Id. The court reasoned that the reason for requiring a lawyer during a custodial interrogation is to protect a person's privilege against self-incrimination, and yet, the detective stated that this was, in effect, the disadvantage of a lawyer. Id. The court also pointed to the detective's comment that "honesty wouldn't hurt him" and found this comment to contradict the Miranda warning that anything he said could be used against him in court. Id. The court based its decision on the totality of the circumstances, including the appellant's trust of the detective and her statements contradicting the Miranda warnings, and found that the appellant "did not truly understand the nature of his right against self-incrimination or the consequences that would result from waiving it." Id. at 895.

Bond argues that Detective Gonzalez's comments similarly undermined the Miranda warnings and indicated that not only would a confession not hurt Bond, but that it would help him. Bond's reliance on Hart is misplaced. In Hart, the appellant had asked about the pros and cons of hiring an attorney and was considering asking for an attorney before answering any questions. The statements made by the detective in that case were in direct response to the appellant's questions regarding his rights. Here, Bond had been speaking to Detective Gonzalez for over two-and-one-half hours before mentioning his inability to afford an attorney, and the comments made by Detective Gonzalez were an attempt to induce Bond to confess and were not in response to any questions about his right to remain silent or to hire an attorney.

The inducements made by Detective Gonzalez were more akin to the vague or indefinite promises the courts have held do not render a confession involuntary. See,

7

e.g., Clark v. State, 808 N.E.2d 1183, 1191 (Ind. 2004) (holding that an officer's statements that "there's a way you can work around this" and that the defendant would not have a future unless he was honest were not promises of benefits, threats, or inducements and did not render the confession involuntary); Carter v. State, 686 N.E.2d 1254, 1259-60 (Ind. 1997) (holding that an officer telling a juvenile that he would not be considered an adult until the age of 18 was not a promise that he would be tried in juvenile court and did not render his confession involuntary); Love v. State, 272 Ind. 672, 676, 400 N.E.2d 1371, 1373 (1980) (holding that an officer telling a juvenile that if he did not confess he might go to adult prison and that his "cooperation might help in assisting him" did not render the confession involuntary). This conclusion is further bolstered by considering the overall context in which Detective Gonzalez made his comments. During the interrogation, Detective Gonzalez told Bond that he could not promise him anything and that he could not guarantee any particular decision. Bond testified that he believed Detective Gonzalez was going to talk to the prosecutor and help him out, but did not mention any particular promises. Thus, the comments made by Detective Gonzalez indicating that he could help Bond if he confessed did not overcome Bond's free will and did not render his confession involuntary.

Bond also points to Detective Gonzalez's comment indicating that there would not be people from his "part of the hood" on the jury. See Br. of Appellant at 6. This comment had racial overtones because Detective Gonzalez mentioned that whites and Hispanics and "other people that aren't from Gary" would be the ones judging him. See id. Bond is African-American. To the extent that the comment implied that there would not be any African-Americans on the jury, it was intentionally deceitful because

8

Detective Gonzalez testified that he knew that this was not necessarily true. The trial court characterized this statement as a "suggestion by the detective that the defendant could not receive a fair and impartial jury due to the location of the Courthouse." Appellant's App. at 52. The trial court stated that this comment "causes great concern to the Court, and is strongly discouraged," but that "there is no caselaw that the Court is aware of that holds that this type of persuasion renders the confession involuntary." Id.

Like the trial court, we do not approve of the comment made by Detective Gonzales. However, this does not necessarily render the confession involuntary. While our supreme court has stated that it does "not condone . . . deceptive police conduct," Luckhart v. State, 736 N.E.2d 227, 231 (Ind. 2000), deception is only one factor to be considered when determining the totality of the circumstances, Kahlenbeck v. State, 719 N.E.2d 1213, 1217 (Ind. 1999). Bond relies on the case of McGhee v. State, 899 N.E.2d 35, 39 (Ind. Ct. App. 2008), trans. denied, in which this court held that a confession was involuntary. In McGhee, the defendant had initially denied having sexual intercourse with his niece, but confessed after being informed by the detective that what he had done was "not against the law if she wanted it." Id. The detective admitted he misrepresented the law but testified that he did not know that incest was a crime for adults. Id. at 37.

Bond argues that McGhee supports the proposition that a "material misrepresentation by the police to a suspect about the law" may be sufficient to render a confession involuntary. Br. of Appellant at 12. He notes that the misrepresentation made by Gonzalez was intentional, unlike the one in McGhee, and, yet, the court held in that case that the confession was involuntary. McGhee is not on point. In that case, the court found that the detective's statement was an implied promise that the defendant would not

9

be prosecuted if he admitted to what he had done and it turned out that the sex was consensual. McGhee, 899 N.E.2d at 39. The court further found that this misstatement of the law is what brought about the confession in that case. Id. Here, as discussed above, there were no specific promises made by Detective Gonzalez. Further, the comment made by Detective Gonzalez did not go to the legality of the conduct under investigation as was the case in McGhee. And, finally, a consideration of the totality of circumstances reveals that the comment made by Detective Gonzalez did not bring about Bond's confession. Bond had been read his rights, indicated that he understood them, and was a mature individual of normal intelligence. In addition, the interrogation lasted less than three-and-one-half hours. See Light, 547 N.E.2d at 1079 (noting that in most cases where confessions were held involuntary, the suspects were interrogated for days, not hours). This case is similar to other cases in which the courts have upheld the voluntariness of a confession despite some police deception. See, e.g., Kahlenbeck, 719 N.E.2d at 1218-19 (holding that police deception of falsely claiming to possess certain evidence did not render the defendant's statement involuntary where defendant had been advised of his rights, indicated that he understood them, was a mature individual of normal intelligence, and had not been interrogated for an inordinate amount of time); Carter v. State, 490 N.E.2d 288, 290-91 (Ind. 1986) (holding that police deception of falsely claiming that the victim was still alive did not render the confession involuntary where defendant had been advised of his rights, indicated that he understood them, was a mature individual of normal intelligence, was not interrogated for an inordinate amount of time, and had been informed he was being investigated for the murder of the victim); see also United States v. Farley, 607 F.3d 1294, 1328 (11th Cir. 2010) (noting that courts

have held statements involuntary because of police trickery only when other aggravating circumstances were also present), cert. denied, 131 S.Ct. 369 (2010). Although Detective Gonzalez's comment to Bond regarding the possibility of facing a jury without anyone of his race or from his area was inappropriate, considering the totality of circumstances, it did not render Bond's confession involuntary.

Bond also points to Detective Gonzalez's repeated promises that he would allow him to see his family if he confessed. However, there is no evidence that these promises—which Detective Gonzalez followed through with—overcame Bond's free will. Detective Gonzalez did not make any threats against Bond's family, see Storey v. State, 830 N.E.2d 1011, 1021 (Ind. Ct. App. 2005) (holding that a threat that the suspect's wife would be arrested rendered the confession involuntary), nor did he warn him that he would not see them for a long time, see United States v. Tingle, 658 F.2d 1332, 1336 (9th Cir. 1981) (holding that a warning that the suspect may not see her two-year-old child for a while was one factor in finding her confession involuntary). Finally, Bond points to his testimony that he had not eaten or slept since being arrested the night before. However, the evidence indicates that Bond was aware of what he was saying and did not appear intoxicated. See Wilkes v. State, 917 N.E.2d 675, 680 (Ind. 2009) (stating that intoxication renders a confession involuntary only when a defendant is unaware of what he is saying), cert. denied, 131 S.Ct. 414 (2010). In sum, considering the totality of the circumstances, we cannot say that Bond's confession was not the product of his rational intellect and free will. Thus, the confession was voluntary and is admissible during his trial.

<u>Conclusion</u>

Bond's confession was made voluntarily and is, therefore, admissible. As a result, we affirm the trial court's denial of his motion to suppress the confession.

Affirmed.

FRIEDLANDER, J., concurs.

KIRSCH, J., dissents with separate opinion.

12

# IN THE
# COURT OF APPEALS OF INDIANA

McLYNNERD BOND,          )
                                      )

    Appellant-Defendant,       )
                                      )

        vs.                    )         No. 45A03-1205-CR-212
                                      )

STATE OF INDIANA,          )
                                      )

    Appellee-Plaintiff.        )

**KIRSCH, Judge, *dissenting*.**

I respectfully dissent.

A police officer sworn to enforce and uphold our laws in a fair and impartial manner calls an African American man an obscene name and screams at him that he is not going to get a fair trial in Crown Point, Indiana because there will be white and Hispanic people on the jury who are not from Gary, Indiana--his "part of the hood."

The trial court stated that the officer's comment "causes *great concern* to the Court, and is *strongly discouraged*." My colleagues "do not *approve* of the comment." Our Supreme Court has stated it does not *condone* "deceptive police conduct."

Yet, each time courts allow such conduct, they implicitly sanction it and encourage the next police officer in the next interrogation to go a bit further, to be more offensive, more racist and more deceptive.

I would go beyond expressing "concern," "discouraging," "not approving" and "condoning," and I would expressly condemn the police conduct that occurred here. Accordingly, I would reverse the trial court's decision to deny the motion to suppress and remand for further proceedings.